THE VILLAGE OF FORT EDWARD, Appellant, *v.* WILBUR W. FISH, Respondent.

*Sale of municipal bonds at less than par — contract conditional on another's certificate — effect of a failure to waive the condition — withdrawal of an offer — voluntary payment in case of a municipal corporation — ultra vires acts of the water commissioners of Fort Edward.*

A contract made by the water commissioners of a village to sell bonds issued thereby for less than par is expressly prohibited by statute and void. The interest which has accrued on the bonds at the time of their sale is as much a part of the amount secured thereby as the principal, and an agreement to sell such bonds for a sum representing their par value, exclusive of interest, is an agreement to sell the bonds at less than par.

The doctrine is well established that it is not just that one party should be bound by a contract when the other party thereto is not, and when by a contract one of the parties is not compelled to take certain bonds, which the other party thereto agrees to sell to him for a specified price, unless the regularity and validity of such bonds are first certified to by a third person, if such third person notifies the vendor that he declines to certify to the regularity and validity of the bonds, the vendor is then free from any obligation to the vendee under the contract, provided the vendee does not waive the provision requiring the approval of such third person to the bonds, before the vendor has acted on the assumption that the contract is at an end.

Prior to its acceptance a party making an offer may withdraw it.

The doctrine as to voluntary payment will apply to a municipal corporation when the officers thereof act within the scope of their powers.

If a controversy arises in reference to the performance of a contract which a municipal corporation had power to execute, and that controversy is duly settled by the corporate officers, such settlement will be binding and conclusive upon the corporation in cases where there has been an irregular exercise of a power conferred upon the corporation; but it is otherwise when an individual has no legal claim against a municipality, under a contract executed by its water commissioners, which they had no power to make.

The water commissioners of the village of Fort Edward are merely the agents of the village, and, except as their acts are within the powers conferred upon them as agents, they do not represent the village.

The officers of a municipal corporation are agents with limited powers, and cannot bind the corporation by any act or contract not authorized by the authority conferred upon them, and in an action on such contract the corporation may interpose the plea of *ultra vires*. In fact, a contract made by the officers of a corporation beyond their power is not the contract of a corporation, but is the wrongful act of the corporation's agents.

APPEAL by the plaintiff, The Village of Fort Edward, from a judgment of the Supreme Court in favor of the defendant, entered

in the office of the clerk of the county of Washington on the 7th day of November, 1894, upon the decision of the court rendered after a trial at the Saratoga Special Term dismissing the plaintiff's complaint.

*R. O. Bascom* and *Edgar T. Brackett*, for the appellant.

*Edward G. Herendeen*, for the respondent.

PUTNAM, P. J.:

It was shown upon the trial that the plaintiff at the times stated in the complaint was a municipal corporation, with a board of trustees and president. In the year 1893 said board of trustees, for the purpose of supplying the village of Fort Edward with water works, organized themselves into a board of water commissioners. And the proper proceedings having been had, pursuant to the provisions of chapter 181 of the Laws of 1875, and chapter 30 of the Laws of 1893, coupon bonds of said village were issued to the amount of $97,000, by their terms drawing interest from May 1, 1893.

Thereupon the water commissioners entered into a contract with the defendant in writing, dated July 20, 1893, whereby they agreed to sell him $50,000 of said bonds with the accrued interest from May 1, 1893, thereon, for $50,000. The interest that had then accrued amounted to the sum of $444.44. The contract at the end thereof contained the following clause: "This agreement is not to be binding on the party of the second part unless Miller, Peckham & Dixon, of No. 80 Broadway, N. Y., approve of the regularity and validity of said bonds in writing."

It appeared upon the trial that after several interviews and communications had between the agents of the water commissioners and Miller, Peckham & Dixon, named in said contract, the latter, on the morning of July 28, 1893, telegraphed to R. A. Armstrong, Jr., who was acting for the water commissioners, as follows:

"*July* 28, 1893.

"R. ARMSTRONG, Jr., Stanwix Hall, Albany:

"Yesterday wrote you; think that the present board of trustees must reorganize as water board and give new bonds before bonds can be issued.        MILLER, PECKHAM & D."

It does not appear that Miller, Peckham & Dixon ever approved said bonds. It was not claimed on the trial that in fact they were not regular and valid.

On the same day that Armstrong received the said telegram, and, I infer, after its receipt, the water commissioners arranged with the Comptroller of the State to take the bonds in question, and subsequently telegraphed to defendant their election to withdraw from said contract. The defendant, after receiving such telegram, answered that he was satisfied with the opinion of the Attorney-General, and that he claimed the delivery of the said bonds in pursuance of the contract.

On August 4, 1893, the agents of the water commissioners and the defendant met at the Comptroller's office in Albany, and the defendant then insisted upon the delivery of said bonds under the contract or the payment of damages. He claimed that the clause in the contract requiring the approval of Miller, Peckham & Dixon was for his benefit and that he waived such approval. After some negotiation the board of water commissioners and defendant entered into the following contract :

" A dispute having arisen concerning the fulfillment of a certain agreement made and entered into by and between the Board of Water Commissioners of the Village of Fort Edward, Washington County, N. Y., and W. W. Fish, of Elmira, N. Y., relative to the sale by said board and the delivery of certain water bonds to said Fish, now, for the purpose of settling said dispute, the said board agrees to pay and the said Fish to accept the sum of seventeen hundred and fifty dollars in full settlement, payment and satisfaction and discharge of all claims and liability of the said water commissioners to the said W. W. Fish for and on account of the failure of said board to deliver said bonds to said Fish under the terms stated in said agreement, said sum to be paid within five days.

" Dated *August 4th,* 1893.

                    " W. W. FISH.

"THE BOARD OF WATER COMMISSIONERS OF THE VILLAGE OF FORT EDWARD,

                    " By JOHN R. DURKEE, *President.*"

In pursuance of said agreement the board of water commissioners paid the defendant $1,750, to recover which sum this action was brought.

The case was tried at a Special Term of this court, and the complaint was dismissed at the close of plaintiff's case.

The question is presented to us whether the board of water commissioners of the village of Fort Edward had power to execute the agreement of August 4, 1893, and make the payment as therein agreed, and whether plaintiff was bound by the settlement effectuated by that contract.

We have reached the conclusion that the contract in question was absolutely void, on the ground that when it was executed defendant had no legal claim against the village of Fort Edward, and the statute conferred no power upon the board of water commissioners to make such a settlement or to give away the funds of said village.

When the original contract of July 20, 1893, between the parties was executed, there was secured by the bonds, of principal and interest, the sum of $50,444.44, which by the agreement in question the water commissioners agreed to sell for $50,000. The agreement, therefore, was a sale of bonds for less than par. Such a contract was expressly prohibited by the statute, and hence it was void. The interest accrued on the bonds when they were sold was as much a part of the amount secured thereby as the principal, and hence the agreement in question was a sale of bonds at less than par.

In the case of *The State of Illinois* v. *Delafield* (8 Paige, 527), where a State had authorized its officers to borrow moneys for its use and to sell its bonds or stock for that purpose, *but for not less than their par value,* it was held that a sale of bonds or stock drawing interest from the time of sale, but which were to be paid for in future installments without interest, was a sale of bonds or stock for less than the par value, and WALWORTH, Chancellor, said : " The very idea of a sale of a bond or draft or other security for the payment of money *at par* is that it is to be sold dollar for dollar of the amount due and payable thereon." (Affirmed, 2 Hill, 159–172; 26 Wend. 192–225.)

The very question discussed in this case was passed upon in the case cited adversely to the position taken by the respondent. In that case, as in this, the bonds were issued at a rate of interest less than the rate authorized by statute, and yet it was held that a sale for less than par and interest accrued was a violation of law, and that the bonds were void. So in this case the board of water commissioners in entering into the contract of July 20, 1893, with defendant not only acted without power in arranging to sell the

bonds at less than the sum secured thereby, but in fact made a contract actually prohibited. Hence it was void, and defendant, under it, derived no legal claim against plaintiff or its board of water commissioners.

Again, under the contract of July twentieth, defendant was not compelled to take the bonds unless the regularity and validity thereof were first certified to by Miller, Peckham & Dixon. The latter, after several interviews and communications with plaintiff's agent, declined to certify to the regularity and validity of said bonds. When plaintiff's agent, on the morning of July 28, 1893, was informed of such refusal, plaintiff then (if not before) was freed from any obligation to defendant under the contract. Miller, Peckham & Dixon refused to certify in writing to the regularity of the bonds, nor does it appear that they have ever made such certification. Therefore, under the contract, by its very terms, on July 20, 1893, the defendant was not bound to take the bonds. It follows that plaintiff was not bound to deliver them. The doctrine that " it is not just that one party should be bound when the other is not " is well established. (*Routledge* v. *Grant,* 3 Carr. & Payne, 267–273; *Rathbone* v. *Warren,* 10 Johns. 587–594; *King* v. *Warfield,* 67 Md. 246.)

It is true that the provision requiring the approval of Miller, Peckham & Dixon was for the benefit of defendant, and probably could have been waived by him. But he did not make such waiver until after plaintiff, as it lawfully might, had acted on the assumption that the contract was at an end. The waiver was too late. After the final refusal of Miller, Peckham & Dixon of July twenty-eighth to approve the regularity and validity of the bonds, if not before, plaintiff's position was like that of one who had made an offer before the acceptance thereof. Plaintiff offered the bonds to defendant at a certain price. He accepted if Miller, Peckham & Dixon approved in writing the regularity and validity of the bonds. Miller, Peckham & Dixon refused such approval. Plaintiff, therefore, had made an offer to defendant to sell the bonds to him, which offer remained unaccepted. Prior to acceptance a party making an offer may withdraw it. (See *Chicago & G. E. Ry. Co.* v. *Dane,* 43 N. Y. 240; Pars. on Cont. 481.)

If the views above advanced are correct when the contract of

August 4, 1893, was made the defendant had no legal claim against the village of Fort Edward or its board of water commissioners, and it follows that such water commissioners had no authority to make the settlement in question.

But it is claimed that plaintiff, through the water commissioners, who are the same persons as the trustees of the village of Fort Edward, when defendant asserted a claim for damages under the contract of July twentieth, voluntarily settled such claim and paid the defendant thereon the sum of $1,750, and that the transaction was an accord and satisfaction, a voluntary payment by plaintiff, and that the same cannot be recovered in this action.

It is doubtless the fact that if the controversy in this case was between individuals or between defendant and a private corporation the settlement made would have been conclusive and the money paid to defendant could not be recovered. The contract of August fourth would have been an accord and satisfaction and the payment made thereunder a voluntary payment.

We see no reason why the doctrine as to voluntary payments should not apply to municipal corporations when the officers thereof act within the scope of their powers. If a controversy arises in reference to a contract which a municipal corporation had power to execute, or in reference to the performance thereof, and that controversy has been duly settled by the corporate officers, such settlement will be binding and conclusive upon the corporation. (*People* v. *Stephens and Others,* 71 N. Y. 527–561.) And this is so in cases where there has been an irregular exercise of power conferred upon municipal corporations. (*Moore* v. *The Mayor,* 73 N. Y. 238.)

But in this case, as we have seen, the defendant had no legal claim against the plaintiff or its water commissioners when the contract of August 4, 1893, was made. The statute conferred no power on the water commissioners to make the contract in question. They were merely agents of the village of Fort Edward, and except as their acts were within the powers conferred upon them as agents they did not represent it.

It is held in *Delafield* v. *The State of Illinois* (26 Wend. 193) that "it is a universal rule that in order to bind the principal upon a contract made by an agent the contract must be within the authority committed to that agent, and that the authority must be strictly fol-

lowed.    If the agent's acts vary substantially from his authority in nature or extent or degree they are void as to the principal and do not bind him."

The officers of a municipal corporation are agents with a limited power and cannot bind the corporation by any act or contract beyond their power, and in an action on such a contract the corporation may interpose the plea of *ultra vires.*    (Dillon's Mun. Corp. [3d ed.] 457, m. p. 381 ; *Moore* v. *Mayor, supra.*)

In fact a contract made by the officers of a municipal corporation beyond their power is not the contract of the corporation.    It is the wrongful act of the corporation's agents.

In *The People of the State of New York* v. *Fields* (58 N. Y. 491) an action was brought by the People against the defendant to recover moneys illegally paid to him by the comptroller of the city of New York.    It was held that the People could not maintain the action, that right being in the People of the city of New York. The following doctrine, which seems decisive of the question involved in this case, was stated in the opinion :  " The payment was made and received without any lawful power in the comptroller to make it.    The defendant is chargeable with knowledge of this.    It was a payment by an agent who had no authority as such to make it.    It was, then, no payment by the principal in mistake of law or ignorance of facts.    The principal, in legal view, had no part in the payment, and it was made against its will.    It was equivalent to an appropriation by the appellant of the moneys to his own use, with the acquiescence and help of the officer of the city who was authorized to pay them out no otherwise than in accordance with law. He having made the payment unlawfully, it was an act not within the scope of his agency, and does not bind his principal.  ( *U. S.* v. *Bartlett*, Daveis, 9 ;  *Stevenson* v. *Mortimer*, Cowp. 805 ; *Taylor* v. *Plumer*, 3 Maule. & Sel. 562.)    There is, for these reasons, a right of action somewhere against the appellant to recover the whole or a part of these moneys."

In *Board of Supervisors* v. *Ellis* (59 N. Y. 620, 624, 625) it is held that a board of supervisors has no power to allow accounts not legally chargeable to the county, and if it does so the act is in excess of jurisdiction and void.    That the board, as an agent of the county, has only a limited jurisdiction, and acts beyond such juris-

diction are void.   The same doctrine has been held in regard to the common council of a city.   (*People ex rel. Coughlin* v. *Gleason*, 121 N. Y. 631; *Lyddy* v. *Long Island City*, 104 id. 218.)

In *Supervisors of Richmond County* v. *Van Clief* (1 Hun, 454; affd., 60 N. Y. 645) it was held that money illegally paid to a supervisor of the county can be recovered back.   (See, also, *People* v. *Starkweather*, 10 J. & S. 333, 334.)

The cases cited by respondent relating to voluntary payments or the effect of an accord and satisfaction are generally those referring to controversies between individuals or private corporations, and not where a municipal corporation was a party.   In the case of *Flynn and Ors.* v. *Hurd* (118 N. Y. 19) it was held that the action of the highway commissioner in making a settlement was an individual act, and hence the rule as to voluntary payments applied.

It follows from the doctrines laid down in the authorities above cited that the action of the water commissioners of the village of Fort Edward in making the contract with the defendant of August 4, 1893, and in paying him $1,750, was not the action of the village of Fort Edward.   The water commissioners acted beyond their power, and hence did not bind their principal.   The act of the agent is the act of the principal only when it is within the power conferred on him.   There has been no accord and satisfaction, no voluntary payment, in this case, because the village of Fort Edward never acted in the matter.   The wrongful action of the assumed agents or water commissioners are not corporate acts.   The water commissioners wrongfully and without any authority, as the defendant was bound to know, put their hands into the treasury of the village of Fort Edward and wrongfully took therefrom the sum of $1,750 and delivered it to the defendant.   It had no right to give the money to the defendant, and he had no right to receive it.

We are of opinion that the plaintiff can recover the sum of money so wrongfully abstracted from its treasury by the illegal action of the water commissioners and the defendant.

The judgment should be reversed and a new trial granted, costs to abide the event.

HERRICK, J., concurred; STOVER, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.