(24 Misc. Rep. 517.)

TROWBRIDGE et al. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   September, 1898.)

MUNICIPAL BONDS—BIDS—CONDITIONS.
    A bid for municipal bonds, containing the clause, "Our bid is to be subject to the approval of the legality of the issues by our counsel," is a conditional bid.

Action by James A. Trowbridge and others, composing the firm of Vermilye & Co., and Jacob H. Schiff and others, composing the firm of Kuhn, Loeb & Co., against the city of New York, Bird S. Coler, individually, and as comptroller of said city, the Produce Exchange Trust Company, and Myron T. Herrick, for an injunction.   Refused.

Strong & Cadwalader, for plaintiffs.

George W. Wickersham and Francis Lynde Stetson, of counsel for plaintiffs.

John Whalen, for defendants city of New York and comptroller.

Delos McCurdy, for defendant Bird S. Coler.

Carter, Hughes & Dwight, for defendants Produce Exchange Trust Company and Myron T. Herrick.

John F. Dillon, Charles F. Brown, William C. De Witt, and Charles E. Hughes, of counsel for defendants.

COHEN, J.   Plaintiffs seek to enjoin the delivery of certain corporate stock of the city of New York by the comptroller to any persons other than themselves.   As a basis for this relief, it is alleged that the comptroller of the city on the 26th day of July invited proposals, by public advertisement, of the stock of the city, to be received not later than the 8th of August, 1898.   On that day the plaintiffs wrote to the comptroller that they would pay 105.03 and accrued interest for the entire amount of the stock offered, but not for any portion thereof; and added, "Our bid is to be subject to the approval of the legality of the issues by our counsel."   On the same day one of the defendants, the Produce Exchange Trust Company, addressed a communication to the comptroller, by which they bid, unqualifiedly and without conditions, for the entire amount of the stock the sum of 104.94 and interest.   On the 16th day of August the comptroller made the award to the Produce Exchange Trust Company.   Plaintiffs complain that this was a clear disobedience of the statute, which provides that the award shall be made to the highest bidder, and that this

unauthorized act caused irreparable damage. The defendants, on the other hand, assert that the plaintiffs' bid was conditional, and therefore illegal, while the bid of the Produce Exchange Company was unconditional, and therefore the highest legal bid. The whole controversy turns upon the meaning in law of the words, "our bid is subject to the approval of the validity of the issues by our counsel." Do they import a condition or term into the plaintiffs' bid other than that which the law would imply if no such language had been used? If so, the act of the comptroller was lawful. It is well settled that by implication the law demands that the vendor must tender a valid issue of stock, and that, if he does not, the purchaser has the right to reject it. But where no qualifying language is used, the question of validity is to be determined by the courts. Of course, this would be done only after a bidder has rejected the stock because of defective title. But here, by express agreement, the approval of the bidders' counsel must be secured before they shall be compelled to take. The plaintiffs contend that this distinction is shadowy and not real, because, in any event, the court must finally determine the validity of the stock,—in other words, plaintiffs insist that persons of full age and competent understanding may use words the natural import and meaning of which is to make a condition, without any effect. On the contrary, the law is that such persons shall be given the fullest liberty to make contracts in any terms they may adopt, and the court will do its utmost to sustain the intent of the contracting parties. If anything could be said to make it clearer than the language itself does that these words do effect a change of substance, let us assume that, after the plaintiffs made their bids, their counsel had disapproved of the validity of the issues, and that thereupon a return of the deposit of $250,000 and upwards had been demanded of the comptroller and refused. In order to recover back that sum, the plaintiffs would have instituted an action, in which they would have been compelled to prove the advertisement of the comptroller, the proposal of the bidders, the deposit of the amount named, the disapproval of their counsel, and the refusal of the comptroller to pay back. Would any court thereupon have dismissed the plaintiffs' complaint, and sent them out of court? Surely not; but this it certainly would have done if the defendant the Produce Exchange Trust Company, under its proposal had only proved as much. If the lower bidder had refused to accept the bonds, and it in turn had asked back the deposit, it would have been incumbent upon the Produce Exchange Trust Company not only to have proved the advertisement, proposal, and deposit, but to have shown the failure of title on the part of the city. Thus it will be seen that there is a real and substantial difference between these two bids; the plaintiffs having far less to prove under their offer than the defendant trust company under its proposal, and the city, in its turn, having far more to prove in the one case than in the other. As has been said, the court might under either proposal become the final arbitrator, but the counsel of the plaintiffs, under the higher bid, would have been the arbitrator—the recognized judge—under the contract, for the time being, and thus to these plaintiffs would have been secured an advantage over the unconditional and lower bidder. Not

to hold that such a bid is conditional would be equivalent to maintaining that a contracting party must not be taken to mean what he says, and that the law will override his very words and his obvious meaning.

The learned counsel have with great industry collected, and with rare clearness presented, many authorities directly or remotely bearing upon the point involved; but none of these is decisive of the question under consideration. With few exceptions (Village of Fort Edward v. Fish, 86 Hun, 545, 33 N. Y. Supp. 784; Coffin v. City of Portland, 43 Fed. 411; Hummel v. Stern, 21 App. Div. 544, 48 N. Y. Supp. 528) they all relate to contracts affecting the title to real property between private individuals. It seems to me that this makes a marked distinction between those cases and the one now being considered.

In the purchase of real estate, the contracting parties come together, and the vendee knows nothing, nor has he any opportunity of knowing anything, about the title of the vendor, and time is given to the vendee to make investigation of title after the contract is executed. That is not true of this contract with the city. Section 182 of the Greater New York charter makes it incumbent on the comptroller to invite proposals for the sale of bonds or stocks by public advertisements for not less than 10 days; that when the proposals are received, they shall be opened in the presence of the commissioners of the sinking fund. Within 3 days after the award to the highest bidder, the comptroller shall return all deposits to unsuccessful bidders, and, if the highest bidder shall refuse, within 5 days after service of written notice of the award to him, to pay to the city chamberlain the amount of stocks or bonds so awarded to him, together with the premium thereon, less the amount of deposit, the deposit shall be forfeited to the city. By the terms of this act, at least 10 days' time, in advance of making their proposal, is given to the bidders. In this instance 13 days were given. During that period, the bidders are at liberty to examine the public statutes, resolutions, and records under which the bonds or stocks are issued, and obtain beforehand a knowledge of the validity of the issue.

The clause requiring payment within five days of the notice of award is also not without significance. It would seem to indicate that the purpose of the statute was to enable the city to obtain money without litigation, and with all possible speed to carry on public works and improvements. To effectuate this purpose, proposals should be unconditional and unequivocal. . The two cases cited (Village of Fort Edward v. Fish, supra, and Coffin v. City of Portland, supra), in which municipal corporations were parties, so far as they have any application to the present question, indicate that words similar to those here employed have a force outside of and beyond that which no words or silence would suggest. The reasoning in Hudson v. Buck, 7 Ch. Div. 683, and Hussey v. Horne-Payne, 8 Ch. Div. 670, seems to me unanswerable when applied to the facts of this case. The reversal of the judgment in Hussey v. Horne-Payne, 4 App. Cas. 311, on grounds other than those decisive in the court of appeals, and the comments of Lord Cairns, do not impair the logic of the opinions expressed by

Sir George Jessel and Justice Cotton in the court below upon the expression "subject to the title being approved by our solicitors." Our court of appeals in Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, refers to a title to real estate, as does also the later case of Flanagan v. Fox, 144 N. Y. 705, 39 N. E. 857. It is upon Vought v. Williams that these plaintiffs rely, but Flanagan v. Fox, which the court of appeals affirmed on the opinion of Mr. Justice Bischoff, refers to the case of Vought v. Williams, and declares that the language upon which these plaintiffs rely was unnecessary to the decision of the case, and therefore not an authority. As this may be open to question, we will regard this language as making a precedent, and not as mere argument. Even with this concession, that opinion makes it clear that, where a contract provides that a title should be first class, and to be passed upon by a lawyer or conveyancer to be designated by the plaintiff, a refusal of counsel to pass the title as good must be unreasonable, and that a failure to obtain the approval of counsel would not defeat a recovery, if in fact the title was good beyond all dispute; so that even this decision—the most favorable to the plaintiffs—interjects a new and different element into the contract from that which the law implies, namely, it might be incumbent upon the vendor to show that the vendees' lawyer unreasonably refused to pass a title which was good beyond all dispute. It follows that plaintiffs' bid was conditional, and therefore the temporary injunction must fall. This conclusion is reached without reference to the extraneous facts and circumstances, such as the city's ability to lawfully incur further obligation, upon which discussion was rife in the press and in the courts shortly before the plaintiffs submitted their proposal. If it were necessary, in the face of the plain unmistakable words of this bid, to venture beyond them into the region of construction and interpretation, such extraneous facts would only serve to confirm the views expressed.