WEBB v. TRUSTEES.

(Filed December 11, 1906).

*Contract to Purchase Bonds—Approval of Attorney—Condition Precedent—Preliminary Negotiations.*

1. Where the plaintiff proposed to purchase certain bonds issued by the defendant, "when legally issued to the satisfaction of our attorney," which proposition was accepted by the defendant, the approval of the attorney selected to pass upon the validity of the bonds, honestly and fairly expressed, was a condition precedent to the completion of the purchase.

2. The correspondence or negotiation leading up to a proposition to purchase bonds is not material, where the proposition made by plaintiff and accepted by defendant was the result of such negotiation, and their relative rights and liabilities must be ascertained and declared upon the plain and unambiguous language found therein.

ACTION by C. A. Webb, doing business as C. A. Webb & Co., against Board of Trustees of the Morganton Graded School District, heard by *Judge O. H. Allen* and a jury, at the June Term, 1906, of the Superior Court of BUNCOMBE.

The Legislature of North Carolina by chapter 455, Laws 1903, incorporated the Morganton Graded School, naming trustees thereof, and by chapter 174, Laws 1905, authorized the said trustees to submit to the voters of the said Morganton School District a proposition for the issue of school bonds to the amount not exceeding $20,000, running forty years from date of issue, bearing interest at a rate not exceeding six per cent. At an election held pursuant to the provisions of said act, said trustees were authorized to issue the said bonds in accordance with the said proposition. Pursuant thereto the said trustees advertised for bids for said bonds to the amount of $15,000.

On 27 July, 1905, the plaintiff, C. A. Webb, doing business under the firm name and style of C. A. Webb & Co., submit-

ted to said board a proposition to buy said bonds, as follows: "For the fifteen thousand dollars of coupon bonds of Morganton Graded School District, due and payable forty years from date, with option of prior payment at the expiration of twenty years from date, drawing interest at the rate of five per cent., payable semi-annually, both principal and interest payable at the First National Bank of Morganton, to be dated 1 September, 1905, we will pay you par and interest, and a premium of $630 and furnish free blanks upon the delivery of the same to us at Asheville, when legally issued to the satisfaction of our attorneys. We herein enclose certified check for $500 as guarantee to faithfully carry out this proposition."

At the time of submitting said proposition plaintiff enclosed a certified check on the Battery Park Bank of Asheville for $500, endorsed to the president of the board of trustees, as follows: "Pay to the order of John H. Pearson upon our failure to comply with our contract this day made for the purchase of fifteen thousand dollars Morganton Graded School bonds. (Dated) July 27, 1905."

At the time of said proposition the defendant trustees were in correspondence with a number of bankers and brokers, dealers in securities of that character. Without advising with counsel, said trustees had, before that time, offered to sell bonds maturing in twenty years instead of forty years; the plaintiff instead of expressing a preference for bonds running twenty years, was of the opinion that said trustees were not authorized to issue said bonds, but did have authority to issue the bonds due and payable forty years from date, with option of prior payment at the expiration of twenty years from date. Immediately upon filing said proposition the said trustees ceased to negotiate with the proposed purchasers of its school bonds, and caused publication to be made that the said bonds had been sold to the plaintiff; the plaintiff submit-

ted to his attorneys in the city of Boston a certified copy of the act authorizing the said issue of bonds and all other certified records which had, at that time, come into the hands of the plaintiff, which tended to show the legality of said bonds, with a request that said attorneys render a legal opinion in respect to the legality thereof. That on 8 August, 1905, the said attorneys, Storey, Thorndyke, Palmer & Thayer, gave to the plaintiff their opinion in writing, saying: "The statute provides for bonds 'running forty years from date of issue' and the notice of election provides for bonds 'to run forty years from date of issue.' In our opinion the bonds must run for forty years without option of prior payment. This result, apparently, does not coincide with your contract, or the contention of the board. Awaiting the further papers which you are to send us, and also awaiting your instructions as to whether in the circumstances we shall proceed to complete the examination, we are, etc." Immediately upon receipt of said opinion, plaintiff submitted same to defendant Board of Trustees, advising said defendant that because of the failure of said attorneys to approve and pass the validity of the character of bonds mentioned in said contract said plaintiff would not take up and pay for the bonds mentioned in said contract unless the defendant would submit the facts with reference to said maturities to the Superior and Supreme Courts of North Carolina for an early decision upon the question as to whether said bonds should run for a period of forty years or could be issued so as to provide for an optional payment at the expiration of twenty years. Said proposition was declined by said board. The said board sent said check to the Battery Park Bank at Asheville for collection and withholds the same, refusing to surrender to the plaintiff. Subsequently the defendants sold the said bonds to the amount of $15,000 for a premium of $2.50 on the $100.

Plaintiff introduced the deposition of Henry Ware, Esq., a member of the firm of Storey, Thorndyke, Palmer & Thayer, who testified that he had been engaged for over nine years in examining records and papers relating to municipalities in North Carolina. That he examined the records, etc., relating to the issue by the defendant trustees, at the request of the plaintiff, and was of opinion that the bonds issued either in accordance with the contract of purchase, that is, payable forty years from that date, with the option of prior payment at the expiration of twenty years, would not be, or have been, legally authorized, for the reason that the statute authorizing the bonds required them to run forty years from date, and did not authorize said trustees to make them payable at an earlier date, either absolutely or at its option. That he communicated said opinion to the plaintiff on 8 August, 1905. He says: "I gave the said opinion in absolute good faith, honestly believing that I was correct in the same, and I still so believe."

The defendant moved for judgment upon the pleadings, and this being denied, there was an exception. Thereupon his Honor submitted the following issue to the jury: "Did the attorneys advise against the legality of the bonds as alleged in the fifth article of the complaint? Answer: Yes."

There were certain exceptions to the testimony and the rulings of his Honor specifically set forth in the assignments of error and appearing in the opinion. Judgment being rendered for the plaintiff, the defendants duly excepted, and appealed.

*Avery & Ervin, C. A. Webb,* and *W. C. Newland* for the plaintiff.

*Avery & Avery* for the defendant.

CONNOR, J., after stating the case: The terms of the proposition made by plaintiff to purchase the bonds issued by defendant, "when legally issued to the satisfaction of our

attorneys," are plain and unambiguous. Similar provisions are frequently found in contracts for purchasing bonds, loaning money, buying stocks, building houses, purchasing land, etc. They are regarded as both wise and reasonable, and are uniformly sustained by the courts. In regard to the purchase of municipal bonds, the value of which for sale on the market is so largely dependent upon the approval of counsel skilled and learned in the laws controlling their issue, it is a most prudent provision. In the light of the frequent litigation growing out of the issue of such bonds, often disastrous to holders, to purchase them without some such protective provision would be imprudent and unsafe. However this may be, parties have the legal right to make such contracts, and it is the duty of the courts to give the language a fair and reasonable interpretation. When so interpreted, we can have no doubt that the approval of the attorneys, as to the legality of the issue, honestly and fairly expressed, was a condition precedent to the completion of the purchase. We may not interpolate into it any other language or give it any other construction. It is uniformly held by the courts that, in the absence of any allegation and proof of bad faith or arbitrary conduct on the part of the person selected to pass upon the validity of the bond or performance of the contract on the part of the person seeking its enforcement, his approval is a condition precedent and is essential to the right to demand performance. It is usually held that when it appears from the pleadings that such provision is a part of the contract, the failure to aver compliance is demurrable.

In *Young v. Jeffreys,* 20 N. C., 357, it appeared that certain persons had made subscriptions for the purpose of building a Methodist Church. The work was to be done according to specifications and accepted by the Commissioners appointed to pass upon it. The objection being made to the payment of the subscriptions that the work had not been accepted, and

that such acceptance was a condition precedent to the pay-
ment, *Gaston, J.*, sustaining a motion for judgment by de-
fendants, said: "There is nothing unreasonable, much less
illegal, in such a condition. Whether a work of art has been
done with proper materials and in a workmanlike style is
an inquiry on which honest differences of opinion may pre-
vail even among persons skilled in the art, and on which men
of ordinary pursuits are very unfit to pass. It is, therefore,
in agreements for works of this kind, a prudent and common
stipulation for the prevention of controversies that the con-
struction of the work shall be determined by some persons in
whose judgment the parties have confidence. If, however,
the judgment of the forum appointed by the parties is to be
disregarded, or revised by a court and jury, the stipulation is
unmeaning." Wharton Const., 593. If the contract is to be
performed to the satisfaction of another, the decision of such
person, if honest, is final, no matter how unreasonable.
*Brown v. Foster*, 113 Mass., 136. In *Church v. Shanklin*,
95 Cal., 626, the contract was made to depend upon the per-
fecting title to certain property "to the satisfaction of Church
& Cory, attorneys." *Patterson, J.*, said: "The record fails
to show that Church & Cory refused to express satisfaction
with the plaintiff's title through any fraudulent or improper
motive.  *  *  *  It was doubtless the object of the parties
to avoid disputes and expensive litigation; certainly some
effect must be given to the stipulation contained in the agree-
ment. To hold that the opinion of the Court as to the validity
of the title can be substituted for that of the arbitrators,
would defeat the intention of the parties and, in effect, make
a new contract for them. This the Court has no right to do.
The parties saw fit to make Church & Cory the umpires be-
tween them, and if the latter exercised their best judgment
in good faith and with an honest intention of determining
the question as to the validity of the title, their conclusion is
final and binding."

In *Mich. Stone, etc., Co. v. Harris,* 81 Fed. Rep., 928, the same question arose upon the construction of a contract for the purchase of municipal bonds, the language being: "We to furnish you with certified transcript of proceedings evidencing legality of issue to the satisfaction of your attorneys prior to the delivery of same." *Judge Lurton* said: "The subject-matter of this contract was the negotiable bonds to be issued for street improvements to be made under a contract between the city and the plaintiff in error. They had not been issued when this agreement was entered into. It was a most reasonable and prudent thing for proposing purchasers to stipulate for some security against the invalidity of such bonds before being required to receive and pay for them. * * * The plain meaning of this contract was: (1) That plaintiffs in error were to furnish certified copies of the proceedings under which these bonds were issued. (2) Defendants in error were to fairly and honestly submit this record, when furnished, to the judgment of the counsel selected by them. (3) The counsel thus selected must not capriciously and arbitrarily reject the bonds, but on the record, honestly and fairly give his judgment as to their legality. * * * The buyers employed counsel, a gentleman particularly skilled in the matter of the validity of municipal bonds, and submitted this evidence to him and procured his opinion. * * * The question of the validity of the bonds was to be settled by the opinion of a third person, whose judgment was to be a legal opinion based upon the law and facts touching these bonds. Neither party would be concluded by an opinion rendered arbitrarily and without the honest intent of deciding fairly and rationally. The contract seems to come fairly within the principle applicable to contracts under which settlements between parties are made dependent upon the certificate of some third person. The rule in such cases is that, in the absence of fraud, or such gross misconduct as would necessarily imply bad faith, or

143—20

the failure to exercise an honest judgment, the action of such third person should conclude the parties." *Kihlberg v. U. S.,* 97 U. S., 398; *Railroad v. March,* 114 U. S., 549; *Averett v. Lipscomb,* 76 Va., 404.

There is no suggestion that the gentlemen selected by plaintiff's attorneys to pass upon the validity of the bonds were not competent or that they did not honestly and in good faith investigate and give their opinion upon the question submitted to them pursuant to the contract. While we have not undertaken to investigate or express any opinion respecting the validity of the bonds proposed to be issued, containing the twenty-year option, we regard it as sufficiently serious to arrest attention and, in the absence of controlling authority, cause counsel to decline to express satisfaction of their validity. Certainly the question cannot be said so free from doubt as to suggest an arbitrary refusal to approve them. We do not think that the correspondence or negotiation leading up to the proposition material. The proposition made by plaintiff and accepted by defendant was the result of such negotiation, and their relative rights and liabilities must be ascertained and declared upon the plain and unambiguous language found therein. We concur with his Honor's rulings upon the several exceptions. The issue submitted to and found by the jury, in the light of the contract, settled the right of the plaintiff.to the relief demanded. The exceptions to the answers of Mr. Ware cannot be sustained. Nor was the proposed testimony of Mr. Ervin material. The judgment was correctly rendered upon the pleadings, and the verdict must be affirmed.

No Error.