8926. CITY OF ROME *v.* BREED, ELLIOT & HARRISON.

1. Where a bid for the purchase of municipal bonds provided: "We are to be furnished with a full and complete certified copy of transcripts establishing the legality of the issue as a direct obligation of Rome, Georgia, satisfactory to our attorneys, prior to our acceptance and payment for the bonds," it was a conditional bid; and a bona fide opinion rendered by such attorneys, to the effect that the legality of the issue had not been satisfactorily shown, would prevent the forfeiture and require the return of a deposit made with the bid. City of San Antonio *v.* Rollins, Tex. (127 S. W. 1166); Trowbridge *v.* New York, 24 Misc. 517 (53 N. Y. Supp. 616).

2. The question in such a case is, not whether the bonds were in fact valid or invalid, but whether the opinion was bona fide and not rendered capriciously or in bad faith. City of Great Falls *v.* Theis, 79 Fed. 943.

3. In a suit by the bidder to recover a forfeited deposit which had accompanied the bid, where it was shown that the opinion rendered by its attorneys was to the effect that the legality of the issue was not satisfactorily shown from the transcripts furnished to it, and where the evidence was within itself without conflict, and nothing was disclosed tending to show collusion between the bidder and its attorneys, or any fraudulent purpose on the part of the latter, and the legal opinion thus rendered contained nothing within itself by which it could be reasonably inferred that it was capriciously or fraudulently made, it was not error for the court to direct a verdict in favor of the plaintiff.

4. The foregoing ruling being controlling in the case, it is unnecessary to pass upon the question as to whether, under the city's advertisement for bids, it had the right to forfeit the bidder's accompanying deposit, upon a failure to comply with the terms of the bid.

DECIDED MARCH 12, 1918.

Complaint; from Floyd superior court—Judge Wright. May 8, 1917. See, ante, 677.

*Max Meyerhardt,* for plaintiff in error.

*Maddox & Doyal,* contra.

JENKINS, J.  In 1915 the City of Rome advertised for bids for $75,000 of its bonds. The advertisement described the bonds and fixed the time at which bids would be received, and contained the following provision: "All bidders must accompany their bids with a certified check for five hundred ($500.00) dollars." Nothing was said about the purpose for which this certified check was required, nor was any notice given that the deposit would be forfeited in case of failure to comply with the terms of the bid. The plaintiff, a corporation, made a bid for these bonds, accompanying the same with a certified check for $500, and the bid was accepted by the City of Rome on March 31, 1915. The bid, as accepted, contained the following provision, to wit: "We are to be furnished with a full and complete certified copy of transcripts establishing the legality of the issue as a direct obligation of Rome, Georgia, satisfactory to our attorneys, prior to our acceptance and payment for the bonds." After the acceptance of the bid the bonds were issued for delivery by the city authorities, signed by the mayor and clerk on April 1, 1915. Pending an investigation of the legality of the issue by Messrs. Caldwell, Masslich & Beed as attorneys for the bidder, the city government of Rome was superseded by a commission form of government, which took office on April 5, 1915. The brief of evidence contains the following: "Cross-examined for the plaintiff, the witness [Hugh McCrary, city clerk] testified that there was a good deal of correspondence with the plaintiff, and, for a month following the first of April, plaintiffs were asking for additional records, etc. Defendant introduced a large number of letters and telegrams from plaintiff and their attorneys, asking for various items of information, and making various objections to the issue of bonds, in none of which objections was there any point made requiring that the bonds be signed by the city commissioners, who came into office on April 5, 1915, until May 12, 1915, when the point was raised in a letter from Caldwell, Masslich & Beed to the city attorney, Max Meyerhardt." The record, however, in no wise discloses what the correspondence here alluded to consisted of. It does not show what the various items of information thus called for related to, nor does it show the character or purport of the objections thus referred to. On May 12, 1915, the attorneys of the plaintiff addressed the following letter to the city attorney of Rome: "Re

City of Rome, Georgia. Municipal building bonds. Max Meyer-hardt, Esq., City Attorney, Rome, Georgia. Dear Sir: We have received from Messrs. Breed, Elliot & Harrison the following tele-gram: 'Rome City Attorney wires please communicate with him direct with copies to us. Why do you want present officials to sign bonds? Bonds were dated April first when present officials not in office. Officials in office on April first signed bonds; no others can legally sign. Am willing for present officials to pass resolution ratifying and confirming bonds and their sale to you.' On Monday our clients called us on the long-distance telephone and told us that the bonds bore the signature of J. D. Hanks, who was mayor on April 1st, 1915, but, according to certificates fur-nished us, went out of office on April 5th. We accordingly told them that the bonds should be signed by the mayor who was in office at the time of delivery and payment, and that the fac simile signature of such mayor should also appear upon the coupons. This is a rule which is universally accepted by attorneys who specialize in the examination of municipal bonds, and is based upon court decisions which throw great doubt upon the legality of bonds signed in any other way, except in the extremely rare cases where statutes expressly authorize the signature of the bonds in advance of their delivery. In this case there is, of course, no such statutory provision. In the case of Coler v. Cleburne, 131 U. S. 162, the Supreme Court of the United States held void in the hands of bona fide holders certain bonds of the City of Cle-burne which were dated January 1st, 1884, and bore the signature of W. N. Hodge, who was mayor on the date of the bonds. They had not, however, been signed by him until July 3d, 1884, on which date the court held 'that the person who then signed the bonds as mayor was a private citizen.' The court says: 'We have always held that even bona fide purchasers of municipal bonds must take the risk of the official character of those who execute them.' The only safe rule to follow, therefore, is that bonds must bear the signature of officials who are in office at the time of delivery and payment, which is, under many decisions of the Federal courts and the courts of various States, equivalent to the date of 'issue.' See Cleveland v. Spartanburg, 54 S. C. 83, 31 S. E. 871; Black v. Fishburn, 66 S. E. 681; Perkins County v. Graff, 114 Fed. 441. In connection with the Cleburne case, see

also cases cited therein and Wright *v.* East Riverside District, 138 Fed. 321. In O'Neill *v.* Yellowstone Irrigation District, 121 Pac. 283, a contrary doctrine was announced, but no cases are cited or discussed, and it does not seem safe to follow this case, except in the State of Montana. We regret the trouble and expense involved in the reprinting and re-execution of the bonds, but under the circumstances it seems to be unavoidable. Since dictating the above, we have received the following telegram from our clients: 'First Commissioner Rome wires please communicate with him direct copies to us, and if you can authorize us to accept bonds according to this telegram please wire him to ship. According to the bond election is is impossible to have bonds signed by present city officials or be reprinted. Will you honor draft if bonds are returned with certificates of filing with Secretary State? Answer.' We are accordingly sending a copy of this letter to the First Commissioner. The statute expressly designates the executive under the commission form of government as either 'Mayor or First Commissioner,' so that a signature by the First Commissioner under the designation of 'Mayor' will be acceptable to us. Yours very truly, [Signed] Caldwell, Masslich & Beed."

The defendant did not undertake to meet the objection thus made, but proceeded on the following day to forfeit the plaintiff's bid, together with the $500 deposited with it. Suit was thereupon filed by the plaintiff (now defendant in error) against the City of Rome to recover this $500, and other items of damage. The latter items were stricken on demurrer, leaving only the item of $500; and, after hearing the evidence, the court directed a verdict in favor of the plaintiff for the said sum of $500, and interest. To this judgment the city excepted.

It is not necessary to add anything further to what is said in the headnotes.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*