R. M. GRANT & CO. v. COUNTY BOARD OF EDUCATION OF WAKE COUNTY.

(Filed 22 October, 1919.)

Counties—Municipal Corporations—Bonds—Conditions Precedent—Approval of Attorney—Legality—Good Faith.

Under an agreement between a county board of education and the proposed purchaser of its bonds, that the acceptance should be subject to the approval of the legality of the issue by the latter's attorney, the adverse opinion of the attorney, given in good faith, is a complete defense to a suit by the board to compel the purchaser's acceptance of and payment for the bonds, and in this case it is *held*, that the reason given by the attorney for his unconditional opinion, that the tax to be levied would not carry the bonds to maturity, and that it must be shown that the required notice of the election had been given, etc., is not subject to the objection that the attorney was passing upon the bonds only as an investment, and not upon their legality, or afford in itself evidence of his bad faith, as a matter of law, in giving his opinion.

CLARK, C. J., concurs in result.

CIVIL ACTION, tried before *Allen, J.*, and a jury, at March Term, 1919, of WAKE.

The action is to recover $500 deposited on condition in a negotiation for purchase of bonds to be issued for defendant, same to be used as part payment on bonds if they were approved and accepted by plaintiff, and otherwise to be returned. On denial of liability and issue submitted, his Honor being of opinion that on all the evidence, if believed, plaintiffs were entitled to recover, and so instructed the jury. Verdict and judgment for plaintiff, and defendant having duly excepted, appealed.

*R. W. Winston and J. Crawford Biggs for plaintiff.*
*N. Y. Gulley, Percy J. Olive, and J. C. Little for defendant.*

HOKE, J. Chapter 457, Private Laws 1913, authorized defendant board to issue coupon bonds in the sum of $25,000, payable, not exceeding 30 years from date of issue, on approval of the voters of the said

school district, and also a tax levy not to exceed 20 cents on the $100 of property, and 60 cents on the pole, to meet the interest on the same as it accrued, and to create a sinking fund to pay off the principal of said bonds at maturity. An election having been held and the measure approved by the voters, bonds to the amount specified, and payable thirty years from date, 1 January, 1917, were prepared, and plaintiffs, dealing in purchase and sale of municipal bonds, made a bid therefor, accompanied by the following stipulations:

"This bid is made for prompt acceptance and is subject to the legality and regularity of the issue being approved by our attorneys, you agreeing to furnish certified copies of all papers which may be necessary, in their opinion, to establish such legality and regularity in all respects. You further agree to pass any additional, reasonable resolutions which may be necessary, in the opinion of our attorneys, to complete the record of proceedings.

"As an evidence of good faith, we attach hereto certified check for five hundred dollars ($500), drawn on the American Exchange Bank of New York and made payable to the order of Board of Education, Wake County, N. C., which is to be held by you pending compliance with the conditions of this bid, and is only to be used as part payment for said bonds when approved and delivered to us; otherwise, said check is to be returned to us or our representative at once."

On 3 January, 1917, this bid was accepted by defendants in terms as offered and receipt of the $500 was acknowledged. The bid, stipulation and acceptance, also the resolutions of the board touching the proposed bond issue, and the action of the voters on the proposition, together with the notices concerning the election, were properly submitted by plaintiff to the attorney, Charles B. Wood, of the firm of Wood & Oakley, Chicago, Ill., with the following letter accompanying same:

"GENTLEMEN :—We hand you herewith certify copy of the proceedings had in connection with an issue of $25,000, Wake Forest Graded School District, Wake County, North Carolina, 5 per cent bonds.

"Kindly let us have your opinion as to the legality of this issue, based on the enclosed record, at your convenience."

On 30 January said attorney, in reply, wrote plaintiffs as follows:

"GENTLEMEN :—"I will approve $25,000 school bonds of Wake Forest Graded School District, North Carolina, dated January 1, 1917, provided the county board passes a new order making the bonds payable serially in such a way that the same can be taken care of, both principal and interest, by the twenty-cent tax which the Legislature has authorized. This tax will not carry the bonds running straight thirty years. In passing the resolution care must be taken to fix the place of payment

of the principal and interest and to provide one single date as the date of the bonds, and that date, of course, should be January 1, 1917, and no other date should appear.

"It must also be shown that the election notice was posted thirty days prior to the election."

After some further correspondence between plaintiff and defendants, in which defendants insisted that plaintiffs admitted the validity of the bonds, and that the tax levy allowed by the law was amply sufficient to pay the current interest and create the sinking fund required by the statute, defendants declined to issue the bonds serially or otherwise than as tendered a straight thirty-year bond. On these facts being communicated to the attorney on 5 April, 1917, he wrote, declining to approve the bonds, as follows:

MESSRS. R. M. GRANT & COMPANY,
   Chicago, Ill.

GENTLEMEN:—I decline to approve $25,000 school bonds of Wake Forest Graded School District, North Carolina, dated January 1, 1917, because the twenty-cent tax levy provided in the act of the Legislature is not sufficient to pay these bonds, and for the further reason that it is not shown that the election notice was posted thirty days prior to the election.        Yours truly,
             . CHARLES B. WOOD.

There was evidence offered to the high character and reputation of plaintiff firm and of the attorney to whom the question of the bond issue was submitted, and by the defendant that the preliminary notices for the election required by section 2967 and affecting the election, had been properly given; that is, that the same had been published thirty days preceding in a newspaper, and by advertisement posted at the courthouse door and four other public places in the county, etc. Also that the assessed property in the school district and the poles therein were sufficient to supply the amount of taxes required by the law for the proposed bond issue, both current interest and a proper sinking fund, etc. .

On these, the pertinent facts of the controversy, the question chiefly presented was fully considered by us in *Webb v. Trustees,* 143 N. C., 299, and it was there held, in effect, that when the designated attorney, acting in good faith, has given an adverse opinion as to the validity of the bonds, the bidder was justified in refusing to proceed further, and in such case the conditional deposit is recoverable by the express terms of the agreement; and the position is not affected by the fact that the opinion of the attorney may have been erroneous unless so arbitrary and capricious as to permit the inference of bad faith. Speaking to the subject, in his well sustained opinion, *Associate Justice Connor* said:

"It is uniformly held by the courts that in the absence of any allegation or proof of bad faith or arbitrary conduct on the part of the person selected to pass upon the validity of the bonds or performance of the contract on the part of the person seeking its enforcement, his approval is a condition precedent and is essential to the right to demand performance. It is usually held that when it appears from the pleadings that such provision is a part of the contract, the failure to aver compliance is demurrable." A like ruling has been made in other jurisdictions and is the principle very generally approved in the decisions on the subject. *Kinnicut v. Joint School Committee,* 165 Wis., 654; *U. S. Trust Co. v. Inc. Town of Guthrie,* 181 Iowa, 992; *City of San Antonio v. Rollins & Sons* (Tex.), 127 S. W., 1166.

In the *Iowa case, supra,* the Court held: "The actual rendition of an attorney of an honest but erroneous opinion that a bond issue is illegal, furnished a complete protection to a prospective purchaser in his refusal to buy under his contract of purchase, provided the bonds be illegal to the satisfaction of our counsel."

And in the *Texas case,* 127 S. W., 1166, it was likewise held as follows:

"Where a bid for municipal bonds provided that prior to delivery the city should furnish procedure satisfactorily evidencing the legality of the bonds to the bidder's attorneys, and that the deposit should be promptly surrendered in case the bidder's attorneys were unable to approve the legality of the bonds, such approval constituted a condition precedent to the city's right to forfeit the deposit, in the absence of a showing that the attorneys' disapproval was fraudulent, capricious, and in bad faith."

In the present case there is no claim or suggestion that there has been any bad faith in fact, either on the part of the bidders or their attorneys. Both are shown to be of high reputation and character, and while we do not pass ultimately upon the correctness of the attorneys' opinion, or the grounds upon which it is made to rest, we may say that his objections are sufficiently serious to challenge inquiry, and assuredly they are not so devoid of merit as to show that he acted capriciously or so as to permit an inference of bad faith as a matter of law. We do not understand that the defendant seeks to question the correctness of this general principle as approved and illustrated in the authorities cited, but it is very earnestly insisted that on perusal of the correspondence and other evidence pertinent to the inquiry it will appear that the attorney has not given an opinion on either the legality or regularity of the bonds as contemplated in the agreement between the parties, but departing from its purpose and meaning, he has disapproved the bonds only because he considers them an undesirable investment.

On the facts in evidence, we do not think such a position can be at all sustained. The bonds were submitted to the attorney with a request for his opinion as to their "legality." His reply formally disapproved the bonds, and, in addition, his deposition is put in evidence, in which he repels the insinuation of bad faith, reaffirms his opinion against the validity of the bonds, stating more fully the grounds upon which such opinion is based, and raising what he assuredly regarded as sound objections to their "legality," and on the record we concur in his Honor's view that if the testimony is believed, it shows that the attorney gave his opinion in good faith and that he acted throughout within the scope of his mission and in the proper performance of the duties intrusted to him.

There is no error and the judgment of the Superior Court is affirmed.
No error.

CLARK, C. J., concurring in result: When the General Assembly authorizes the issue of bonds by the State or a county, township, municipality, or board, the duties of the commissioners or boards authorized to issue such bonds are restricted in issuing the bonds to the amount and in the manner prescribed by the statute. When the bonds are offered for sale this must be done in compliance with the terms prescribed by the statute. If the highest bidder afterwards declines to take the bonds, the only question which can be presented is whether or not the bonds are a valid indebtedness, and regularly issued in accordance with the terms of the statute.

There is no authority conferred upon the commissioners of a county, or any board, to make private contracts with bidders containing stipulations as to matters not set forth in the statute.

If such stipulations as that they shall meet the approval of the lawyers for the bidders were valid, that would raise simply the question whether such lawyer is of that opinion, and if he rejects the bonds that ends the controversy. There is nothing for the courts to pass upon.

To permit the commissioners, or boards, to make outside agreements that bonds shall meet the views of the bidders in matters not prescribed by the statute would be to recognize in them *ultra vires* powers, and it would give to the counsel of the bidders power to raise any moot question which their fancy or whim may suggest.

This Court has been very slow to answer inquiries of the Legislature on hypothetical questions, and it will only do so in grave matters requiring such action. We certainly should not recognize the unrestricted power of counsel for bidders to raise any question they see fit, and by taking an adverse view to the officers authorized to sell the bonds, present to the courts for decision any whimsical or fanciful moot question which

they may desire. We have always refused requests for instruction by sheriffs, executors and administrators, or for the construction of wills when no direct judgment was required.

It would seem that the proper course to pursue in such cases is to treat the attempted contract as null and void, because not authorized by the statute, and to dismiss the proceeding. The sole question which can legally be presented to the courts, in my judgment, is whether the bonds are a valid indebtedness and issued in conformity with the provisions of the statute in every respect. Beyond that we have no authority to go, and should not gratify the curiosity or discuss the theories of those who wish to raise other questions.

The bidder, in this case, knew the amount of the levy authorized. Whether it will or will not raise sufficient revenue in the future to meet the indebtedness, and whether or not serial bonds would be a better investment, were matters for the consideration of the bidder before bidding, but in nowise affect the validity or regularity of the bonds which are the only questions the courts are authorized to decide.