## GRANT v. CITY OF MINERAL WELLS et al.
### (No. 9528.)

(Court of Civil Appeals of Texas. Fort Worth. March 19, 1921. Rehearing Denied April 23, 1921.)

1. **Municipal corporations** ⬤⟿921(1)—Evidence held not to show bad faith on the part of plaintiff in selecting attorneys or of attorneys in rendering opinion adverse to city bonds' legality.

In an action to recover a good faith deposit on a contract to sell defendant city's bonds, they having been rejected by plaintiff because of the adverse opinion of his attorneys, the contract having provided for their approval before acceptance, evidence *held* not to show want of good faith on the part of plaintiff in referring the legality of the bonds to attorneys named, nor want of good faith on the part of such attorneys, the plaintiff being legally entitled to terminate the contract on their opinion, regardless of motive.

2. **Municipal corporations** ⬤⟿921(1)—Where party agreed to dispose of city's bonds on approval of his attorneys, held that attorneys' disapproval was justified in view of a decision of the Court of Civil Appeals.

Where plaintiff had agreed to dispose of a city's bonds upon their approval by plaintiff's attorneys and the proposition submitted to the voters stated that the issue was "not to exceed $75,000," plaintiff's attorneys were justified in refusing to approve of the bonds because of a Court of Civil Appeals case deciding that such a submission did not comply with the statute where the Supreme Court on appeal held the decision of such proposition unnecessary, but did not disaffirm the opinion thereon.

3. **Municipal corporations** ⬤⟿921(1)—Plaintiff contracting to dispose of city's bonds on his attorneys' approval may recover good faith deposit after attorneys' adverse opinion.

Where plaintiff sued to recover a deposit made to show good faith in carrying out a contract to dispose of the defendant city's bonds subject to the approval of plaintiff's attorneys, if they in good faith rendered an opinion that the bonds were invalid and plaintiff in good faith acted thereon plaintiff could recover, even though the objection to the bond issue be groundless, there being no reservation for approval by any other attorney or official body, and no proof that plaintiff was negligent in selecting a qualified attorney.

4. **Municipal corporations** ⬤⟿921(1) — Attorney's opinion on legality of bond issue held not unfounded or wanting in good faith.

Where plaintiff sued to recover a good faith deposit made on a contract to dispose of a city's bonds after refusing the bonds because of

---

his attorney's adverse opinion, the contract providing for acceptance upon his attorney's approval only, where the grounds of objection were entertained seriously by the attorney general the matter being a debatable question upon which attorneys might differ as to the bond issue's legality, the opinion cannot be condemned as unfounded or wanting in good faith.

5. Municipal corporations ⊚⟶921(1)—Plaintiff held entitled to return of good faith deposit with interest from date of demand.

In an action to recover a good faith deposit on a contract by which plaintiff was to dispose of defendant city's bonds upon their approval by plaintiff's attorney whose opinion was adverse in which plaintiff claimed damages because of greater cost in disposing of bonds than that agreed to in the contract, the burden was on the city to prove fraudulent or capricious conduct of plaintiff's attorneys, and in the absence of evidence of collusion between plaintiff and his attorneys, and the city having failed to show lack of reasonable foundation for the attorney's adverse opinion, plaintiff is entitled to judgment for the return of the deposit with legal interest thereon from date of demand therefor.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by R. M. Grant against the City of Mineral Wells and others. Judgment denying plaintiff recovery and also denying defendant any recovery on its plea over, and plaintiff appeals. Reversed, and rendered for plaintiff.

Harris, McCall & Graham, of Dallas, for appellant.

Penix, Miller, Perkins & Dean and John W. Birdwell, all of Mineral Wells, for appellees.

CONNER, C. J. Stated in its briefest form, the city of Mineral Wells, in the year 1917, issued $69,000 of bonds for the purpose of purchasing and establishing a waterworks system. After a number of letters and telegrams, R. M. Grant, of the city of Chicago, proposed by letter, addressed to the board of commissioners of Mineral Wells, to find "an immediate purchaser" for such bonds "at par and accrued interest to date of delivery" for a compensation of $2,760, said sum to be paid to R. M. Grant on delivery of the bonds to the purchaser. It was specially provided, however, that:

"This offer is made subject to the legality and regularity of the issue being approved by our attorney, you agreeing to furnish certified copies of all papers which may be necessary, in their opinion, to establish such legality and regularity in all respects. You further agreed to pass any additional, reasonable resolutions which may be necessary in the opinion of our attorneys, to complete the record of proceedings."

"As an evidence of our good faith to carry out this agreement" R. M. Grant deposited in a bank in the city of Mineral Wells the sum of $1,000.

The proposition referred to was accepted by the mayor and commissioners of Mineral Wells on the 10th day of October, 1917. On October 11th, the city of Mineral Wells forwarded certified copies of the city's charter, ordinances, minutes, and other papers relating to the bonds, which, it appears from a letter dated October 15, 1917, was duly received at the office of R. M. Grant. On the same day, R. M. Grant appears to have referred transcript covering the issuance of the bonds in question to C. B. Wood, an attorney of Chicago, who, on October 24, 1917, returned a report specifying certain objections not thought necessary to here state, but which the authorities of the city of Mineral Wells attempted to correct. The evidence is to the effect that when the corrected transcript as prepared by the city of Mineral Wells was forwarded to and received by R. M. Grant that attorney Wood was out of the city, and for that reason R. M. Grant referred the entire record relating to the bond issue to a Mr. T. S. Chapman, of the city of Chicago, who, on December 14, 1917, addressed the following letter to R. M. Grant:

"We have examined record on $69,000 waterworks bond of Mineral Wells, Texas, sufficiently to reveal noncompliance with chapter 149 of the Acts of 1899 (articles 605–607 of Vernon's Sayles' Statutes 1914). Observe that article 606 requires that the proposition submitted to election shall distinctly specify the amount of the issue. In the pertinent proceedings the amount of the issue was stated as 'not to exceed $75,000.' In the case of Parks v. West, 108 S. W. 466, the Texas Court of Civil Appeals held that the use of the expression 'not more than' before an amount expressing the rate of tax levy rendered such amount uncertain and the pertinent election void, because not complying with a provision requiring that the notice of election 'state the amount of tax to be levied.' The principle set forth in Parks v. West finds support in the recent cases of Elliott v. Tillamook County, 86 Or. 427, 168 Pac. 77, and Stern v. Fargo, 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665.

"If the record were otherwise satisfactory, the bonds could not be approved on the present sale because the same was in effect at considerably less than par, and in violation of article 617 of the statutes, which provides that bonds 'shall not be sold at less than its par value and accumulated interest, exclusive of commissions.' Clearly, the conditions in respect of sale have not been called to the attention of the Attorney General, insomuch as he would not, we are convinced, approve the issue on the present sale with the information at hand.

"Yours very truly,      T. S. Chapman."

Immediately upon receipt of this letter, appellant notified the city of Mineral Wells of the unfavorable report and demanded a return of the $1,000 deposited, which having been refused, this suit was instituted. The

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

city defended upon the ground that the objections to its bond issue were frivolous, unfounded, and made in bad faith, and further pleaded that the city had later been compelled to sell its said issue of bonds at a depreciated value, in that it had been compelled to pay as a commission for the sale the sum of $6,900 instead of $2,700, as the plaintiff had agreed to accept, thus causing a loss to the city of $4,200, for which it prayed for a recovery over against the plaintiff.

The trial, which was before the court without a jury, resulted in a judgment denying the plaintiff the recovery of the $1,000, for which he sued, and also denied the city of Mineral Wells any recovery on its plea over, and from the judgment so rendered this appeal has been prosecuted.

[1] A Mr. Princell testified in behalf of the plaintiff that he knew the plaintiff was engaged in the purchase and sale of municipal bonds; that he was familiar with the business of plaintiff; and, that his practice in the purchase of bonds was to refer the legality and regularity of the issues to an attorney or attorneys specializing in the examination of municipal bond proceedings; that R. M. Grant depended entirely upon the opinion of such bond attorney as to the validity of any bonds handled by him; that the transcript of proceedings in this case had been submitted to C. B. Wood and also to R. S. Chapman, of Chicago; that both these attorneys qualify as being nationally prominent lawyers, specializing in municipal bond transcripts of proceedings; that their opinion on the validity of the bond issue was usually accepted by bond dealers and the investing public; that both attorneys are reputed to be specialists in such matters, and it was for that reason that the record in this case had been submitted to them. This witness further testified, in substance, that R. M. Grant had received several letters from Mr. Wood upon the legality and regularity of the bond issue, copies of which were referred to the city of Mineral Wells for the purpose of having certain questions cleared up; that on account of Mr. Wood's absence from the city for several weeks in the midst of the examination of this bond issue, and because of the several questions raised by him which did not appear upon their face easily answered, the record or transcript of proceedings in question was referred to Mr. Chapman, who advised that he could give quick action; that in view of the opinion rendered by Mr. Chapman that he would not approve the legality or regularity of the bonds, R. M. Grant could not take up and pay for said bonds. That neither R. M. Grant nor any other responsible bond firm will endeavor to put on the market issue of bonds about which there is any question as to their legality. He further testified:

"The reason why R. M. Grant declined to accept the bonds in question and pay the purchase price agreed to therefor, was because Attorney T. S. Chapman, of Chicago, Ill., declined to approve the legality and regularity of said bonds. * * * I can answer positively that I acted on behalf of R. M. Grant in good faith. I absolutely did not act in collusion with attorney Chapman. * * * The transaction as between attorney Chapman and R. M. Grant in connection with this bond issue * * * was handled in good faith."

As against this there was no testimony upon which to base a finding that there was a want of good faith on the part of appellant in referring the legality of the issue under consideration to either Wood or Chapman, or of a want of good faith on the part of the attorneys to whom the proceedings were further referred in giving their opinion, unless the fact that in the meantime, because of disturbed conditions brought about by the war, there was a decline in the market price, but the extent of such decline, if any, has not been pointed out, and if it had been, and the decline had been considerable, and if it be further assumed that appellant had the desire to avoid his contract, nevertheless, by the terms of the contract, he was legally entitled to terminate it, the motive in so doing being immaterial.

[2] It is to be recalled in this connection that in the notice of the election and of the proposition submitted to the voters it was stated that the bond issue was "not to exceed $75,000." This was objected to as a defect in the proceedings, in that it did not comply with the law which required the proposition in such case to be certain, and Mr. Chapman cited the case of Parks v. West (Tex. Civ. App.) 108 S. W. 466, by one of our Courts of Civil Appeals, as having decided, in effect, that such an expression rendered the amount of the issue uncertain, leaving, in effect, the determination of the amount of the issue to the commissioners instead of to the voters, and that such uncertainty rendered the election void, because not complying with the provisions requiring that the notice of election "state the amount of tax to be levied."

We think the case of Parks v. West afforded a well-grounded objection to the proceedings, and that, as stated by Mr. Chapman, that case found support in the other case referred to in his letter, to wit, the cases of Elliott v. Tillamook County, 86 Or. 427, 168 Pac. 77, and Stern v. Fargo, 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665, both of which have been examined by us. True, a writ of error was granted by our Supreme Court and the opinion of the Court of Civil Appeals set aside. See Parks v. West, 102 Tex. 11, 111 S. W. 726. But in reversing the opinion of the Court of Civil Appeals, the Supreme Court expressly stated that a decision of the sufficiency or legality of the form in which the question in that case was sub-

mitted to the electors was unnecessary. In other words, the Supreme Court did not disaffirm the opinion of the Court of Civil Appeals on the particular question involved in the objection of Mr. Chapman, above stated. The objection of Mr. Chapman was of a character that could not be remedied or obviated so as to give legality to the bond issue in question, and if such objection was well taken, as we are inclined to hold, we think it clear that under the terms of the proposition of R. M. Grant, as made and as accepted by the city of Mineral Wells, the former had the right to demand a return of the deposit made by him as an evidence of his good faith.

[3] But if the view last above expressed should be a mistaken one, and the objection to the bond issue in fact groundless, yet, if the attorney Chapman, in good faith, rendered his opinion as he did, and if in good faith R. M. Grant acted thereon, his right to recover the deposit is no less clear. Appellant's proposition was expressly made "subject to the regularity and legality of the issue being approved by our attorney." The proposition was accepted in this form, and, under the contract as thus made, appellant was not bound to accept the opinion or approval of any other attorney or of any other official body. The privilege of curing defects in the proceedings or of establishing the groundless character of the objections to the bond issue was not accorded by the terms of the contract. No such reservation was made for the benefit of the city, and, as stated, we think appellant had the clear right to rely upon the opinion of attorneys selected by him, there being no proof that appellant was negligent in the selection of a qualified attorney, or that the opinion rendered was a collusive one, or one not made in good faith.

[4, 5] The case of City of San Antonio v. Rollins & Sons, 127 S. W. 1166–1199, was a case in which a proposed purchase of the bonds was rejected on the ground that the attorney to whom the proceedings had been submitted had declined to approve them. It was contended, among other things, that the opinion was not made in good faith. The court held that the burden of disproving the good faith of the attorney's opinion was upon the city. There was an effort in that case, as in this, to show that the refusal to complete the purchase was because there was a decline in the bond market, rather than because of the disapproval of the attorney, and the court further said as to this:

"But, however this may have been, the question was the good faith of the attorney in giving them the opinion. However much Rollins & Sons may have been inconvenienced, or disabled by the monetary conditions which prevailed, and however much it may have been to their interest to get away from the contract, nevertheless, if the opinion of the attorney was rendered in good faith, that alone relieved them from any contract, and entitled them to refunding of their deposit. We cannot, nor could

a jury, on such an issue presume dishonesty on the part of the attorney. The presumption is to the contrary. * * * The reason given by Mr. Wood for not approving the legality of the bonds cannot be said to be frivolous or capricious. It may or may not have been sound. That is not the question we are considering. The objection made by him was shown to have been entertained and seriously considered by the Attorney General in connection with the same bonds. It was and is clearly a debatable question, and one on which lawyers might well differ. Upon its face, and in connection with the facts surrounding this issue of bonds, his opinion cannot be condemned as unfounded or wanting in good faith.

"It is contended or suggested by appellant [the city] that the Attorney General of the state expressed his approval of the legality of these bonds, and therefore the reason upon which Mr. Wood based his opinion of their invalidity was groundless and unreasonable. * * *

"We conclude that the first assignment of error should be overruled, and the ground we place this ruling upon is that the opinion of Mr. Wood was, of itself, sufficient to require the peremptory instruction, unless appellant had adduced sufficient evidence to substantiate its plea alleging bad faith on his part in giving the opinion; and the evidence relied on for the purpose was not sufficient, in our judgment, to carry the question to the jury. * * * The burden was upon the city to prove fraudulent or capricious conduct of the attorney in the giving of his opinion on these bonds. * * * The whole case of the city must rest upon the lack of any reasonable foundation for Mr. Wood's opinion, and this could not be found from the face of the reason itself. There is absolutely no evidence of collusion between Wood and plaintiffs."

Of much the same effect are the cases of Amarillo v. Slayton & Co., 208 S. W. 967, and U. S. Trust Co. v. Town of Guthrie Center, 181 Iowa, 992, 165 N. W. 188. The rule is well stated by the Supreme Court of Nebraska in Thurman v. Omaha, 64 Neb. 490, 90 N. W. 253. It is there said that:

"Where a party stipulates that his contract of purchase shall be subject to the opinion of his attorney as to the title to or legal status of the thing proposed to be purchased, the plain purpose being to make his act dependent upon the personal opinion of his legal advisor, the sole requirement is that such legal advisor in fact pass upon the subject and give his honest opinion, and the merits of an honest opinion actually given are not subject to review;" that is, it "is conclusive, provided he really passes upon the question and reaches a conclusion honestly, whether his conclusion is right or wrong."

See, also, City of Great Falls v. Theis (C. C.) 79 Fed. 943; Kinnicutt et al. v. School District, 165 Wis. 654, 163 N. W. 167; Trowbridge v. City of New York, 24 Misc. Rep. 517, 53 N. Y. Supp. 616; Webb v. Trustees of Morganton School, 143 N. C. 299, 55 S. E. 719; Church v. Shanklin, 95 Cal. 626, 30 Pac. 789, 17 L. R. A. 207; Allen v. Pockwitz, 103 Cal. 86, 36 Pac. 1039, 42 Am. St. Rep. 99;

Thompson v. Dickerson, 68 Mo. App. 535; Flanagan v. Fox, 6 Misc. Rep. 132, 26 N. Y. Supp. 48; Haney-Campbell Co. v. Preston, 119 Iowa, 192, 93 N. W. 297; Inman v. Cereal Co., 124 Iowa, 737, 100 N. W. 860; Sargent v. Sibley, 6 Ohio Dec. 1219; Michigan Stone Co. v. Harris, 81 Fed. 928, 27 C. C. A. 6; Liberman v. Beckwith, 79 Conn. 317, 65 Atl. 153, 8 Ann. Cas. 271; Hollingsworth v. Colthurst, 78 Kan. 455, 96 Pac. 851, 18 L. R. A. (N. S.) 741, 130 Am. St. Rep. 382; Watts v. Holland, 86 Va. 999, 11 S. E. 1015; City of Rome v. Breed et al., 21 Ga. App. 805, 95 S. E. 474; R. M. Grant & Co. v. County Board of Education of Wake County, 178 N. C. 329, 100 S. E. 522.

These authorities, we think, abundantly support the conclusion to which we have arrived that under undisputed facts appellant was entitled to a judgment against the city for a return of his said deposit, together with interest thereon at the legal rate from the date of his demand therefor, and this conclusion sufficiently answers appellee's cross-assignment of error complaining of the failure of the court to grant a judgment over against appellant on its said cross-plea.

On the further prayer of appellant for a judgment awarding a mandamus against the city of Mineral Wells to compel the payment of the judgment here rendered, we have concluded the record and briefs do not afford us sufficient information to justify such award, but this conclusion is not to be held as precluding appellant at some future time should it be found necessary to institute an action to secure such relief.

The judgment below is reversed, and here rendered for appellant.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes