CLARK, C. J., dissenting.
Civil action. The action is to recover of defendants a certified check, or amount of same, deposited with the defendants as a guarantee of good faith in their bid made in April, 1917, on a proposed bond issue of the county in the sum of $50,000, for the purpose of building a county home for the aged and infirm.
Defendants, denying plaintiff's right to a return of the check, or proceeds of same, alleged further and by way of counterclaim that plaintiffs wrongfully and in breach of their contract refused to take said bonds at their specified bid, and defendants were thereby compelled to sell said bonds to other purchasers at a loss to the county of $3,990, and the county suffered damages to said amount in addition to the $500 check which plaintiff had failed and refused to pay, etc.
The following issues being submitted to the jury:
"1. Is plaintiff the owner and entitled to the possession of the certified check in its controversy and sued for in this action?
"2. What amount, if any is plaintiff indebted to defendant on the counterclaim?"
Evidence was offered by both parties, and at the close the court instructed the jury that on all the evidence, if the jury believed the same, they would answer the first issue "Yes" and the second issue "Nothing." Verdict and judgment for plaintiff, and defendant excepted and appealed.
The facts in evidence tended to show that on 5 April, 1917, defendants having invited bids for a proposed bond issue of the county of $50,000 for the purpose of building a county home, plaintiff with others submitted their bid and deposited with defendants their certified check for $500 as an evidence of good faith, same to be credited on the price of the bonds in case plaintiff's bid was accepted and they became the purchasers. That plaintiff's bid was submitted in writing duly *Page 692 
signed by Bruce Craven as attorney for plaintiff, and same contained an offer of a premium for said bonds of $1,790, and also a stipulation in terms as follows:
"Prior to taking up and paying for said bonds you are to furnish us with a full and accurate transcript of the record, duly certified, of the proceedings leading up to and culminating this issuance and delivery of the bonds, to the satisfaction of our attorney. Herewith is our certified check for $500 as evidence of good faith in making this bid, which is to be retained by you and presented for payment as part of the purchase price of the said bonds, provided the same are duly awarded to us on this bid and delivered to us in accordance with the terms thereof at the Northern National Bank in Toledo, Ohio."
That plaintiff's being the higher bid, defendants, by formal resolution spread upon the minutes of the board and signed by them, accepted said bid and awarded the bonds to plaintiffs in pursuance of the terms of the same. That the records considered necessary appertaining to the proposed bond issue some time thereafter, about or just before 11 April, were forwarded to plaintiffs at Toledo, Ohio, and on being submitted to their regular bond attorney, W. H. Roose, he replied by letter of 16 April, asking for further data, and such data being furnished, said attorney, on 30 April, wrote a letter giving his opinion in formal disapproval of said bond issue, and containing among other things the following:
"It appears from the data now furnished that the above-mentioned bonds are being issued under the so-called inherent right of the county officials to borrow money for necessary expenses. This being true, there is no authority to levy a special tax for the payment of said bonds, but same would have to be taken care of out of the general county-purpose tax. It also appears that $105,000 of the outstanding bonded indebtedness of said county has been issued under a local law which authorizes the levy of a special tax to take care of same. This leaves $159,000 of such outstanding bonded indebtedness which must also be taken care of out of the general county-purpose tax.
"It appears from the certificate of the Register of Deeds of Cabarrus County, now submitted, that said county is now levying 47 2/3 cents on the $100 valuation for State and school purposes, 19 cents for county purposes, 30 cents special road, and 8 cents special interest and bridge fund. It therefore appears that there has already been levied in said county for State and county purposes 66 2/3 cents on the $100 valuation, not counting the special tax. This being the maximum amount of taxes which may be levied in any year, its is quite apparent that said county will be unable to levy the additional tax necessary to take care of this new issue of bonds. I am therefore returning to your herewith the transcript submitted without my approving opinion." *Page 693 
And the deposition of W. H. Roose, in reference to said bonds, and duly put in evidence, is as follows:
"I, W. H. Roose, of the city of Toledo, am a practicing attorney duly qualified and authorized to practice within the State of Ohio. I have been a practicing attorney for 35 years and a bond attorney almost exclusively for 20 years, and am still in the active practice of law, particularly bond law. I have my office at Room No. 740, Spitzer Building, Toledo, Ohio. On 11 April, 1917, W. L. Slayton Co. submitted to me a transcript of the record of the proceedings of the Board of County Commissioners of Cabarrus County, North Carolina, relating to the issuance of $50,000 home bonds, and requesting my opinion as to the legality of the proceedings leading up to and including the issuance of said bonds.
"After a very thorough examination of the transcript of the record of the proceedings of said board relating to the issuance of said bonds, I advised W. L. Slayton Co. that I could not approve said issue of bonds. I am attaching hereto copies of two letters I wrote to W. L. Slayton Co., which contained my opinion rendered to them regarding the validity and legality of said bonds, the first letter dated 16 April, 1917, and now marked `Exhibit A,' and the second letter dated 30 April, 1917, and now marked `Exhibit B.' My opinion was made after a very thorough examination of the transcript and of the statutes and law of the State of North Carolina a, and in entire good faith, and was based on my conviction that the construction of a county home was not a necessary expense as contemplated by section 7 of Article VII of the Constitution of North Carolina; and that even though it might be considered a necessary expense, the county was already levying taxes up to its constitutional limit."
There was also evidence of the good character and capacity of said attorney. Immediately on receipt of this opinion plaintiff notified defendant that they would not proceed further in the proposed purchase, and defendants were compelled to dispose of the bonds at a lower bid and with a loss to the county as stated.
It also appeared that defendants had duly tendered the bonds, claiming that there had been a definite contract of purchase at the price, which plaintiffs refused as stated, and some time thereafter, plaintiff etc., and in suit entered therefor set up a counterclaim for damages incident to plaintiff's alleged breach of their agreement to buy the bonds.
It has been held by this Court, in cases where the question was directly considered, that where a bid for bonds has been made on condition of approval of the bidder's attorney as to the legality of the proposed bond issue, such stipulation is a condition precedent to a *Page 694 
binding agreement to purchase, and in the absence of bad faith, the position will prevail though the attorney's opinion prove to be erroneous.Grant v. Board of Education, 178 N.C. 329; Webb v. Trustees, 143 N.C. 299;City of Rome v. Breed Co., 21 Ga. App. 805.
In the Webb case, supra, the matter was discussed in a well-considered opinion by our former associate, Mr. Justice Connor, and it was there held as follows:
"Where the plaintiff proposed to purchase certain bonds issued by the defendant, `when legally issued to the satisfaction of our attorney,' which proposition was accepted by the defendant, the approval of the attorney selected to pass upon the validity of the bonds, honestly and fairly expressed, was a condition precedent to the completion of the purchase.
"The correspondence or negotiation leading up to a proposition to purchase bonds is not material, where the proposition made by plaintiff and accepted by defendant was the result of such negotiation, and their relative rights and liabilities must be ascertained and declared upon the plain and unambiguous language found therein."
And in the subsequent case of Grant v. Board of Education the Court, in upholding this decision, and as pertinent to this inquiry, said: "On these, the pertinent facts of the controversy, the question chiefly presented was fully considered by us in Webb v. Trustees, 143 N.C. 299, and it was there held in effect that when the designated attorney, acting in good faith, has given an adverse opinion as to the validity of the bonds, the bidder was justified in refusing to proceed further, and in such case the conditional deposit is recoverable by the express terms of the agreement, and the position is not affected by the fact that the opinion of the attorney may have been erroneous, unless so arbitrary and capricious as to permit the inference of bad faith," citing further authorities: Kinnicentv. Joint School Committee, 165 Wis. 654; U.S. Trust Co. v. Inc. Town ofGuthrie, 181 Iowa 992; City of San Antonio v. Rollins Sons (Texas), 127 S.W. 1166.
This being the principle as it prevails here, we can find no valid reason why the cases heretofore cited shall not be regarded as controlling on the facts of this record. It is contended for appellant that by the terms of the condition the attorney is not authorized to pass on the validity of the bonds, but only, and as a matter of form, on the regularity of the procedure leading up to the proposed issue, but this to our minds is not a fair or permissible interpretation of the condition expressed in the bid, and would in effect be to rob the stipulation of all significance. Considering the position of the parties, the purpose had in view, and the more reasonable meaning of the words used, it is clear, we think, that the "full and proper record" is to be furnished to *Page 695 
afford the attorney reliable data for his opinion on the validity of the bonds as a binding municipal obligation enforceable by taxation, and, so considered, the opinion of the attorney was well within the purpose and meaning of the powers contained in the terms of the bid. Commissioners ofJohnston v. State Treasures, 174 N.C. 141-145.
It is further insisted that the stipulation is of no effect because Bruce Craven, Esq., who submitted the bid for plaintiff before same was accepted, gave definite assurance that the record and bond issue would be approved by his principals. A proper perusal of the record will disclose, we think, that this statement of Mr. Craven was not intended or received as a contractual modification of the written bid submitted by him, but was rather by way of retort to the charge of an opposing bidder that the principals represented by Mr. Craven were in the habit of avoiding their bid when it suited them to do so, but if the evidence is to receive a different interpretation the position here may not avail the defendants because of the fact that plaintiff's bid was submitted and thereafter formally accepted in writing, and this, the express written agreement of the parties containing the condition of the attorney's approval, may not be varied by a previous or contemporary stipulation in direct modification of the written contract between them. Improvement Co. v. Andrews,176 N.C. 280; Mfg. Co. v. McCormick, 175 N.C. 277; Walkerv. Venters, 148 N.C. 388; Bank v. Moore, 138 N.C. 529, citing Meekins v. Newberry, 101 N.C. 18; Ray v. Blackwell, 94 N.C. 10.
In the impressive language of the present Chief Justice, in Walker v.Venters, supra, "The written word abides." And in Ray v. Blackwell, supra,Smith, Chief Justice, delivering the opinion, said: "It is a settled rule too firmly established in the law of evidence to need a reference to authority in its support that parol evidence will not be heard to contradict or alter the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for the purpose."
Nor is there any evidence tending to show that Mr. Craven had any authority to modify the terms of plaintiff's written bid, or that defendants in accepting the bid understood acted in any belief in such authority. On the contrary, the only sworn testimony is to the effect that he was the attorney of plaintiff only to submit the bid of plaintiff in the terms and at the price specified, and to show that defendants so understood it, they submitted the data as to the procedure leading up to the proposed bond issue, and the circumstances attending it, to plaintiff's bond attorney in Toledo, Ohio.
As we have seen in the authorities cited, the mere fact that the attorney has given an erroneous opinion is without significance unless, as *Page 696 
stated in one of the authorities cited (City of San Antonio v. Rollins, Texas), "The disapproval was fraudulent, capricious, and in bad faith," and in our opinion such a position cannot for a moment be upheld. True, as pointed out by appellant, this Court had directly decided, nearly a month before the opinion was submitted, and contrary to the same, that the building of a county home was a necessary county expense, and that a debt therefor could be contracted and taxes laid without a popular vote on the subject, but the facts in evidence do not disclose that the attorney knew of this or that he was likely to know of it, and assuredly the circumstances are not such as to permit an inference of fraud on his part concerning it. The opinion refereed to, announcing the principle, was rendered at Spring Term, 1917, being filed 14 March of that year. It did not appear in our published Reports published in the S.E. until four five weeks after it was filed. On the record, therefore, this matter was considered and the written opinion given by the attorney before the Court opinion in question appeared in any accredited publication likely to have come under the observation of the attorney, and the possibility that he might have seen it is entirely too vague to constitute legal evidence on an issue of fraud.
On authority apposite such a charge is not even made in the pleadings with sufficient definiteness to raise an issue of that kind. Galloway v.Goolsby, 176 N.C. 635-639; Best v. Best, 161 N.C. 514; Mottu v. Davis,151 N.C. 237.
And assuredly there is no evidence to sustain such a charge against a man proved to be an honorable and capable attorney whose opinion shows that he had examined the matter with care and had given an opinion based on our published Reports, and so far as they were then reasonably accessible to him.
We think the charge of his Honor is in accord with the precedents applicable, and the judgment on the verdict is affirmed.
No error.