# Richmond.

## AVERETT, TRUSTEE, AND ALS. V. LIPSCOMBE.

### April 13, 1882.

1. MARRIED WOMEN—*Separate estates.*—*Jus disponendi* incident to estate settled to separate use of *feme covert*, unless restricted by the instrument creating it.

2. IDEM—*Implied restriction.*—Restraint on power of alienation may be implied, but the implication must be very clear.

3. IDEM—*Conveyance.*—Any instrument signed by her operates as a direction to the trustees to convey or hold the estate according to the new trust created by the direction. This suffices to pass her equitable interest. When the legal title is added, the alienation is complete. *Taylor* v. *Meads,* 34 Law Journal (N. S.), 203.

4. SALE AT AUCTION—*Parol evidence.*—In suit by vendors of land sold at public auction, against purchaser to compel him to comply, *parol* evidence is admissible to prove that the written memorandum of contract signed by the auctioneer, does not contain the stipulation relied on as a condition.

5. CASE AT BAR —Testator devised real estate to L to be held by trustee until she arrived at age, or married, and so held for her separate use that neither the property, its proceeds or profits should be liable for her husband's debts or contracts. L married and she, her husband, and her trustee attempted to sell and convey the property.

HELD :

They have full power to sell and convey the property with good title.

6. IDEM.—By advertisement signed by all three, the real estate is offered for sale. Before auctioneer commenced, he announced that any purchaser should have right to examine the title, and if he was not satisfied with it, he should not be required to comply with the terms of the sale. As soon as he had knocked off the property to purchaser, auctioneer made a memorandum in writing of the contract and signed it, but omitted the stipulation announced as a condition. Purchaser, however, had relied on the announcement, and at once employed counsel to examine the title, who reported that he could not recommend it. Therefore purchaser refused to complete the purchase. In suit by trustee, husband and wife to enforce specific performance—

HELD :

1. Vendors can make good title ; yet  purchaser is not compellable to take the property, and specific  performance will not be decreed.

2. The parties themselves had  stipulated that in a  given event, the agreement should be void—and that event came to pass.

Appeal from decree of  hustings court of Danville in suit of Lelia Gray, Robert F. Gray, her husband, and W. P. Averett, her trustee, against John P. Lipscombe, to enforce specific  performance of a purchase  by  him of  the female plaintiff's real estate, made at auction on printed advertisement, signed by herself, husband and trustee.   Court below dismissed the bill, and the plaintiffs appealed to this court. The facts and the grounds of  defence are fully set forth in the opinion of  the court.

*Green & Miller* and  *W. W. Henry,* for appellants.

*E. E. Bouldin,* for appellees.

BURKS, J., delivered the opinion of  the court.

This is the case of a bill  filed  by a married  woman in conjunction with  her  husband and  her  trustee to enforce specific performance of  a contract for the sale of  her separate real estate.   One of  the grounds on which the purchaser  resisted the execution. of  the contract was,  that neither the wife, nor husband, nor  trustee, nor any nor all of  them combined, could make a good title to the property contracted  to  be sold ; in other  words, that the  property was settled  to  the separate use of  the wife without the power of  alienation.   The court below sustained that view, and upon that ground, and that only, as  shown  by  the recitals of  the decree and the opinion filed with it, dismissed the bill.

We have no doubt  whatever that Mrs. Gray, in conjunc-

tion with her husband, had full power to sell and convey
the property to the purchaser. A conveyance from them
would transfer a good equitable title, and operate as an
imperative direction to the trustee to hold the estate to the
use of the purchaser, and convey it as such purchaser
might direct and appoint. "The true theory of her (the
wife's) alienation," says Lord Chancellor Westbury, in the
leading case of *Taylor* v. *Meads*, 34 Law Journal (U. S.), 203,
"is, that any instrument, be it deed or writing, when signed
by her, operates as a direction to the trustees to convey or
hold the estate according to the new trust which is created
by such direction. This is sufficient to convey the *feme
covert's* equitable interest. When the trust thus created is
clothed with the legal estate, the alienation is complete
both at law and in equity."

The fourteenth paragraph of the will under which Mrs.
Gray derives title, directs the property given and devised
to her to be held by a guardian or trustee to be appointed
by the court until she arrives at the age of twenty-one
years or marries, and upon her marriage to be settled to
her separate use, and that the trustee named in the will
shall execute and declare for record such trust in reference
to the property given as may be necessary to carry out the
wishes of the testator in the premises. The directions as
to the appointment of the trustee by the court and the de-
claration of trust on record were duly complied with.

Now, this paragraph is the only part of the will relating
to the trust, and it very plainly gives a separate estate
without restriction on the power of alienation. It is con-
ceded that negative words are not indispensable to impose
restraint on the power. The intention to limit it may be
implied, but, as has been often said, it must be clear.
There is absolutely nothing in the paragraph referred to,
or in the context, or indeed in any part of the will, from
which such intention can be deduced. In the creation of

the use, the operative words are, "shall be settled to the separate use of said girl so marrying, so that neither said property, or its proceeds, nor profits, shall be liable for the contracts or debts of her husband." The first branch of the sentence alone was sufficient to create a separate alienable estate. In *Tullett* v. *Armstrong*, 1 Beavan, 1, so often cited with approbation by this court, Lord Langdale lays down the following as one of the rules deduced from the authorities: "If the gift be made for her [the wife's] sole and separate use, without more, she has, during the coverture, an alienable estate independent of her husband." It is very common, however, to add some such words as are found in the latter branch of the sentence, "so that neither said property, or its proceeds, nor profits, shall be liable for the contracts or debts of the husband." They are added *ex abundanti cautela* to exclude in terms the rights of the husband, not to limit the powers of the wife. As said by Lord Eldon, in *Parkes* v. *White*, 11 Ves. 222, in reference to other words relied on in argument as restrictive, they are "only the unfolding of all that is implied in a gift 'to the separate use.'"

The cases decided by this court bearing on this question are too familiar to require citation or comment from the bench. For the distinction to be taken between a case like the present and *Bank of Greensboro'* v. *Chambers and others*, 30 Gratt. 202, and *Ropp* v. *Minor and others*, 33 Gratt. 97, we refer to what is said in the opinion delivered a few days ago in *Bain and Brother* v. *Buff's Adm'r and others*, ante p. 371.

If, therefore, the alleged inability of the vendors to make good title had been the only objection to a decree for specific performance, we should have been of opinion that the court erred in dismissing the bill. But there was another ground of defence relied on by the purchaser. The sale was by public auction, after advertisement, written or printed, signed by the wife, her husband, and her trustee.

As soon as the property was knocked down to the purchaser, the auctioneer made a memorandum in writing of the contract and signed it. Lipscombe (the purchaser) in his answer to the bill, avers that at the time of the sale and before the auction commenced, it was announced by the auctioneer "that if any person should purchase any one of the lots [offered], he should have the right to examine the title to the same, and if he was not satisfied with the title he would not be required to take said lot and comply with the terms of the sale; that, relying upon this public announcement," he made the purchase; that soon after the sale he employed counsel to examine the title; that the counsel made the examination and reported to him that he could not recommend to him to take the lot; and because of this advice of counsel, he was unwilling and refused to complete the purchase, and insists that he cannot be compelled to do so.

These averments of the answer are clearly established by the proof. The uncontradicted testimony of the witnesses is full, distinct, and directly to the point. Assuming that the oral evidence by which these facts were established was admissible, we are of opinion that Lipscombe cannot be required, against his will, to complete the purchase. The public announcement by the auctioneer, the agent of the vendors, was an essential term in the offer to sell, and it was accepted as such by the purchaser. It is immaterial that this court now considers that the vendors were and are able to make good title. That is not the question. The contract left it to the purchaser to determine for himself the matter of title. If, on examination, he was not in good faith satisfied with the title, he was not to be bound. The bargain was at end. His counsel made the examination and advised against the title, and acting on that advice he declined the purchase, and the court below, in the reasons given for its decree, in effect sanctions the advice given.

In *Williams* v. *Edwards*, 2 Sim. 78, one of the terms of the agreement was that the contract should be void if the purchaser's counsel should be of opinion that a marketable title could not be made by a certain time. The counsel being of that opinion, a bill by the purchaser for a specific performance, with a compensation, was dismissed with costs. Speaking of this term of the agreement, the vice-chancellor said: "There appears to be nothing unreasonable in that. There might be circumstances which might make it very proper for both parties to insert that term; and, as it was the contract of both parties, this court can not make a new contract for them. The parties themselves have stipulated that, in a given event, the agreement should be void."

The written memorandum of the contract, signed by the auctioneer, does not contain the stipulation relied on as a condition, and the oral evidence adduced to establish it is excepted to on the ground that it varies the writing. We think such evidence is competent, when offered, as in the present case, by the *defendant* in a suit for specific performance, to show that the writing fails to express the real agreement.

The application for relief in such a suit is always addressed to the sound discretion of the court, and the contract as written will not be enforced, against the will of the defendant, where he can make it appear that from accident, mistake, inadvertence, fraud, or like circumstance, it does not fairly and truly express the agreement of the parties in any essential particular; and he is allowed to shew this by parol evidence. This principle would seem to apply with peculiar force, where the only written evidence of the contract is a brief memorandum made out and signed by the auctioneer in the absence of the purchaser. The omission by him to add the condition, which is an essential term of the agreement, whether such omission

be attributable to design, mistake, ignorance, or inadvertence on his part, should not be permitted to prejudice the rights of an innocent purchaser, especially when the discretionary power of the court is invoked by the vendor to carry the contract into execution.

Though the reasons assigned by the hustings court for its decree are not approved, yet the bill, for the reasons given by us, was properly dismissed, and the decree will be affirmed.

In the view taken by us, the case might have been disposed of here without considering the question raised as to the power of Mrs. Gray over her separate estate. Counsel, however, desired the opinion of the court on that question, and it seemed to us proper that it should be given.

DECREE AFFIRMED.