## MATADOR LAND AND CATTLE COMPANY v. C. W. WHITE.
### No. 3105.

**Construction of Contract.**—In a contract for the sale of horses from a specified lot it was specified in the writing signed by the parties that the buyer "is to be allowed to cut back all horses not desired." The purchaser refused to take any. Suit to recover damages, there being eighty-five to one hundred head of horses in the lot, and it being insisted that but a small number should have been cut back. *Held:*

1. With that provision in the contract it can not be treated as an agreement binding the purchaser to take all but eight or ten, or any other number.

2. We are unable to give the agreement any other effect than to treat it as conferring upon the purchaser an option to purchase upon the terms stated in the writing.

3. The purchaser had the right to reject the whole of the horses.

4. Testimony was inadmissible to show that it was understood that all would be taken but eight or ten of the lot of horses.

APPEAL from Tarrant. Tried below before Hon. R. E. BECKHAM. The opinion states the case.

*Stanley, Spoontz & Meek,* for appellant.—The agreement made was not one prohibited by law, and is merely a buyer's option, a trade contract in common use with stock dealers, by which a buyer obtains the privilege of cutting or culling a herd at a certain price per head, taking only such as he wants to fill a certain grade or contract, and the provision that he shall have the right to cut back is put in to avoid all dispute as to the number or quality, for buyer's benefit, and gives him the right to accept or reject all or none.

*Holland & Holland,* for appellee.—1. Plaintiff's petition shows a good cause of action against the defendant, as the contract pleaded as a basis of this suit shows that defendant's agent Campbell had examined and decided to take a certain lot of said horses between the 1st and 15th of April. White v. Land and Cattle Co., 75 Texas, 465; Hearne v. Gillett, 62 Texas, 23; James v. Adams & Wicks, 64 Texas, 193.

2.　　The court correctly construed the contract sued upon. White v. Land and Cattle Co., 75 Texas, 465; Hearne v. Gillett, 62 Texas, 23; James v. Adams & Wicks, 64 Texas, 193; Watrous v. McKie, 54 Texas, 65.

3.　　All the provisions of a written contract must be construed together to ascertain their true meaning, and that construction will be adopted which will harmonize and give an interpretation to each clause · consistent with the meaning of the rest of the instrument.

· HENRY, ASSOCIATE JUSTICE.—This suit was brought by the appellee to recover damages resulting from the alleged breach of the following contract:

"FORT WORTH, TEXAS, March 15, 1884.

"This agreement, made this day, by and between C. W. White and H. H. Campbell, for the Matador Land and Cattle Company, is to the following effect:

. "That whereas, C. W. White has between eighty-five and one hundred head of saddle horses in a pasture near the town of Henrietta, which have been examined by the said Campbell, agent, and said Campbell having decided to take a certain lot of said horses, it is hereby agreed and understood that the said Campbell is to receive the said horses between the 1st and 15th of April following, and is to be allowed to cut back all horses not desired, and he hereby agrees to take all the remainder and pay therefor the sum of $55 per head for the same at the time of receiving.

"Signed this the 15th day of March, 1884.

"C. W. WHITE.
"H. H. CAMPBELL,
"For the Matador Land and Cattle Co."

The cause was tried without a jury, resulting in a judgment for the plaintiff for the sum of $2267.30.

This is the second appeal of the cause. (See White v. Matador Land and Cattle Company, 75 Texas, 465.) The trial from which the first appeal was taken was by the judge without a jury.

As shown by the opinion of this court on the first appeal, the judge of the District Court found as a conclusion of law on the first trial: "That by the terms of the agreement defendant had the right to reject any number of the horses mentioned upon further inspection, and that by said terms the defendant was under no obligation to take any number of horses."

In the opinion of this court it was then said: "We are not prepared to say that this construction of the instrument is correct. If so, however, we do not think that when it is read in the light of the plaintiff's testimony it supports the finding referred to."

Upon a re-examination of the question we are now satisfied that the conclusion of the District Court on the first trial of the cause was correct.

If the other parts of the agreement standing alone could be treated as binding the cattle company to take some of the horses, still they would be controlled by the clause that it was to be permitted "to cut back all horses not desired." With that provision in the contract it can not be treated as an agreement binding the cattle company to take all but eight or ten or any other number of the horses. We are unable to give the agreement any other effect than to treat it as conferring upon the cattle company an option to purchase the cattle upon the terms stated in the writing.

White, the plaintiff, testified as follows: "I made the contract with Mr. Campbell read in evidence. Mr. Campbell sent a man up to examine the horses, and this man returned and reported to him. I was present when this man returned and reported to him. He said there were about eight or ten horses he did not think would suit, and it was understood that if that many were found that did not suit for his purposes, specifying what kind of horses he wanted, that those would be thrown out. That was the agreement, and the certain lot of horses referred to in the written agreement means the balance of the herd, he having the right to reject some eight or ten which he said he thought would not suit."

Campbell testified, that he described to White what kind of horses he wanted to purchase; that Mr. Richardson, who worked for Mr. Strahann, was going near the horses and he asked him to look at them; that Richardson reported them to be a fair lot of horses, and that Campbell could cut some of them out, but witness did not remember that he stated the number that he thought would suit him or anything about that; and further, that "Mr. White wrote the contract. There was no number of horses that I bound myself to take. I would just take anything that suited me, and that was the cause of tearing up the two contracts and writing the third. They said something that I objected to. He (White) told me that I could cut back the horses and select just such as suited me, and I told him that was the only kind I would take, just such as I needed and wanted."

Harrison testified, that "he went to receive the horses from White for the cattle company; that White's agent had rounded up a bunch of about 100 head of horses, over one-third of which were mares and colts, and the remainder small ponies, thin and poor, and not over sixty saddle horses in the lot; that none of them were up to the standard, and that he declined to take any of them."

We think the contract shows upon its face that the cattle company had the right to reject the whole of the horses as it did, and that it was improper to receive parol evidence to show what the parties to it in-

tended by it.   But if such evidence be looked to, we think it supports the same conclusion.

The judgment will be reversed and here rendered for the appellant.

*Reversed and rendered.*

Delivered December 11, 1891.

A motion for rehearing was refused.