## CITY OF GREAT FALLS v. THEIS et al.

(Circuit Court, D. Washington, E. D. March 29, 1897.)

1. MUNICIPAL BONDS—DELAY OF BUYER TO QUESTION VALIDITY.
    Where a contract for the sale of municipal bonds provided that the city should furnish full information and copies of the record of all proceedings affecting the validity of the bonds, and that the buyers should give notice of their rejection of the bonds for illegality, prior to a specified date, otherwise they should be deemed to have accepted them, the city waived the right to enforce the time provision with strictness by its own delay in furnishing copies of its records, and by its action in submitting the records to the attorneys known to have been employed by the buyers to pass upon the validity of the bonds after the time to give notice of rejection had elapsed.

2. SALE—DOUBT AS TO VALIDITY.
    A buyer of municipal bonds from the city is not liable in damages for refusing to accept them when their marketable value is destroyed or impaired by questions of legality arising from facts shown by, or omissions in, the city's own records; and it is immaterial that after his refusal, and after the bonds have been sold by the city to other parties, the state supreme court adjudges the bonds to be valid, as the purchaser then has no opportunity to accept them with the benefit of such adjudication.

Forster & Wakefield, for plaintiff.
Blake & Post, for defendants.

HANFORD, District Judge. This is an action at law by the city of Great Falls, a municipal corporation of the state of Montana, against the firm of Theis & Foster and the Washington National Bank of the City of Spokane, upon a contract and a check. The contract was entered into by Theis & Foster, whereby they agreed to purchase bonds of the city of Great Falls to the amount of $100,000. The check was drawn by Theis & Foster upon the Washington National Bank for the sum of $5,000, and was duly certified by the bank, and was deposited with the treasurer of the city of Great Falls as a guaranty

of good faith on the part of Theis & Foster in bidding for the purchase of said bonds, and was intended to insure performance of the contract on their part.    By stipulation of parties, a jury was waived, and the case has been tried and submitted to the court for its decision upon all the questions of fact and law.

Upon consideration of the evidence, and admissions of the parties, I find the material facts to be as follows:   Pursuant to a resolution of the city council of Great Falls, there was submitted to the qualified electors of said city, to be voted upon at an election held on the 11th day of April, 1892, propositions to issue bonds of the city as follows: $40,000 to provide means for the purchase of land for a city park, $30,000 for the purpose of funding the floating debt of the city, $30,000 to provide means to pay for the construction of a main sewer in said city.    The vote at said election was favorable to the issuance of all of the bonds proposed.    Assuming to act under authority conferred by vote of the electors as aforesaid, the city officers advertised the bonds for sale, and invited bids therefor.    Theis & Foster put in a bid for all of said bonds, accompanied by the $5,000 check above mentioned. Their bid being accepted, they afterwards signed the contract above mentioned, agreeing to purchase the bonds, and pay the amount bid therefor within a specified time.    In the contract it is provided that the city should furnish full information and copies of the record of all proceedings affecting the validity of the bonds, and that the buyers should give notice of their rejection of the bonds for illegality prior to a specified date, otherwise they should be deemed to have accepted them.    There was delay in completing the transaction, and, after the time had passed for the buyers to give notice of rejection, a representative of the city submitted copies of the record to Messrs. Hornblower, Byrne & Taylor, attorneys at law in the city of New York, upon whose opinion as to the validity of the bonds the buyers depended, and said attorneys afterwards gave an opinion adverse to the bonds.    Without receiving formal notice from the buyers of their rejection or acceptance of the bonds, the same were disposed of to other parties, and that transaction gave rise to a lawsuit in the courts of the state of Montana, which culminated in a decision of the supreme court sustaining the validity of the bonds    See Dunn v. City of Great Falls, 31 Pac. 1017–1020.    No ordinance of the city was ever passed authorizing said propositions to be submitted to the voters at said election, nor authorizing the issuance or sale of bonds, nor authorizing the officers of the city to enter into said contract with Theis & Foster.    The vote in the city council upon which the resolution authorizing the submission of the question of issuing bonds to the voters at said election was not taken by ayes and nays.    There is no competent evidence in the case before me to prove that notice of the proposed sale of said bonds was advertised, as the laws of Montana prescribe that such notice shall be advertised.    At an election held in the city of Great Falls on April 14, 1891, a proposition was carried to issue bonds of the city to the amount of $50,000, and the bonds so authorized were issued and disposed of, and were outstanding on the 11th day of April, 1892.

The several provisions of the Montana statutes material to be considered are as follows:    By section 325, div. 5, of the Montana Com-

piled Statutes, under which the city of Great Falls was incorporated, the city is given limited power to borrow money and issue bonds; and power is conferred upon the city council to pass ordinances for the purpose of carrying into effect the powers of the corporation. No other mode of exercising the power to borrow money or issue bonds is provided. This section also enumerates the purposes for which the city may borrow money, and the purchase of land for a city park is not among the things enumerated. Sections 326 and 334 of the same statute prescribe the style in which all ordinances must be formulated, and provides for keeping a proper record thereof. Section 337 requires that upon the passage of ordinances and resolutions by the city council the ayes and nays shall be called and recorded, and that an affirmative vote by a majority of the members shall be necessary to pass any ordinance or resolution. Section 370 gives the mayor power to sign or veto any ordinance, and no ordinance can take effect until it shall have been submitted to the mayor for his signature. Section 3 of an act dated September 14, 1887, which was in force at the time of the transactions here involved, prescribes that notice of a proposed sale of city bonds must be advertised for four weeks in a newspaper of the city, and also in a newspaper published in the city of New York. Section 2 of the statute last cited provides that an election for the purpose of authorizing the issuance of bonds by a city shall not be held oftener than once in 12 months.

Theis & Foster failed to take the bonds and pay for them, and they defend this action for the reason that they were advised by their attorneys, Messrs. Hornblower, Byrne & Taylor, that said bonds were invalid, because the city failed to conform to the laws of the state in the proceedings referred to. On the other hand, the city relies upon the decision of the supreme court of Montana in the case of Dunn v. City of Great Falls as a final determination by the court of highest authority, affirming the validity of the bonds, and it also maintains that Theis & Foster waived all right to reject the bonds by their failure to give notice of such rejection prior to the date fixed by the contract for giving such notice. I accept, without question, the decision of the supreme court of Montana in the case of Dunn v. City of Great Falls as a final adjudication of the only question which the record in that case presents; that is, whether or not the bonds were invalid, by reason of the amount thereof, when added to other indebtedness of the city, being in excess of the limitation upon the power of the city to incur indebtedness, prescribed by the constitution of the state. The report of the case shows that every other question affecting the legality of the bonds must have been excluded from the consideration of the court by the manner in which the case was made up and submitted, for it must be presumed that the court considered and passed upon all questions arising from the facts appearing by the record, and the opinion of the court certainly gives no hint of any other question in the case. Other questions of a serious nature are presented in the record before me, and must receive attention, before a decision can be rendered determining the rights of the parties in this action. I do not think that Theis & Foster should be estopped from questioning the validity of the bonds by reason of their failure to give notice of their rejection

79 F.—60

of the bonds in time. The contract plainly shows that the parties contemplated an examination of the city records, and the buyers were of right entitled to have a reasonable time for that purpose after the copies were furnished. Therefore I hold that the plaintiff waived the right to enforce the time provision with strictness by its own delay in furnishing copies of its records, and by its action in submitting the records to the attorneys, who were known to have been employed by Theis & Foster, to pass upon the validity of the bonds, after the time for Theis & Foster to give notice of rejection had elapsed.

The question whether the bonds are actually valid or invalid, is one which affects parties who are not in this court litigating for their rights. My opinion as to the proper construction of the contract, and the law applicable thereto, enables me to reach a conclusion in this case without forming or expressing any opinion whatever upon that question. It is a matter of common knowledge that municipal bonds and such like securities are bought and sold and hypothecated as the necessities or convenience of investors may require. Investors and financial agents who handle this class of paper for large amounts are in most instances but little acquainted with the proceedings upon which the validity of such paper depends. It is therefore necessary, to give such paper commercial value, to have an examination and certificate by lawyers capable of detecting irregularities and omissions of such a nature as to raise serious questions, and whose reputation is sufficient to command confidence, and give weight to their opinions in financial centers. Theis & Foster did not propose to blindly invest over $100,000 in obligations of the city of Great Falls merely to acquire a right of action, and take their chances of a favorable decision in the courts in case the city itself, or any of its taxpayers, should see fit, at any time, to dispute the right of the city to incur indebtedness to the amount and for the purposes mentioned. In view of these well-known facts, and in accordance with the usages of the country in such transactions, it is necessary, in order to give effect to the intentions of the parties, to read into the contract an implied condition that the buyers should not be bound to take the bonds unless the proceedings of the city government had been conducted in substantial conformity with the laws, and proper records had been made, so that competent lawyers of good reputation would be able to certify to the validity of the bonds. In every contract to sell land and give a good and sufficient deed there is an implied warranty for a marketable title, and the vendor cannot enforce the contract against his vendee, when there is an apparent flaw in his title, for in such a case the court will not hazard an opinion as to whether or not the title can be sustained, if it should become the subject of litigation. For the same reasons the courts must, in such cases as the one under consideration, refuse to adjudge a party liable to pay damages for refusing to accept municipal bonds without marketable value, where the value is destroyed or impaired by questions of legality arising from facts shown by, or omissions in, the plaintiff's own records.

The decision in the case of Dunn v. City of Great Falls affords no ground for fastening liability upon the defendants in this action, for the reason that that case did not originate until after the bonds had been disposed of to other parties, and the plaintiff had deprived itself of power to afford Theis & Foster an opportunity to accept the bonds, with the benefit of a decision affirming the validity thereof, by the supreme court of the state; and for the further reason that said decision does not settle the questions arising from the failure of the city government to exercise its power to borrow money by the passage of proper ordinances, as required by its charter; nor as to its power to borrow money for a purpose not authorized by any express provisions of law; nor as to the validity of a vote on the question of issuing bonds at an election held within 12 calendar months after an election authorizing bonds previously issued. For the reasons above given, I hold that no breach of the contract has been proven, and the defendants are not liable. Findings may be prepared, and a judgment in favor of the defendants entered thereon, in accordance with this opinion.