## CAMPBELL v. HART.
### No. 15406.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 13, 1953.

Rehearing Denied March 13, 1953.

256

Charles L. Morgan and John T. Gano, both of Fort Worth, for appellant.

Dell Barber and Perry Barber, of Colorado City, and Clyde & Barnes, of Fort Worth, for appellee.

BOYD, Justice.

This is a suit for damages instituted by appellee T. C. Hart, as plaintiff, against appellant Francis K. Campbell, as defendant, growing out of an alleged breach of contract to purchase a mineral interest in a tract of land in Mitchell County, the amount sued for representing the difference between the contract price and the market value of the interest at the time of the alleged breach. Upon a verdict of the jury, judgment was rendered for the plaintiff for $18,000, and the defendant appeals.

Appellee has filed a motion to dismiss the appeal, in which it is alleged that this court has no jurisdiction of the attempted appeal because, he alleges, the judgment was rendered in the trial court on the 29th day of May, 1952, and appellant's original motion for new trial was not filed within ten days after that date, as required by Rule 330(k), Texas Rules of Civil Procedure; that since the motion for new trial was a nullity, the time for perfecting the various steps of the appeal began to run from the date of the judgment, and not from the date appellant's motion for new trial was overruled; that the statement of facts was not filed in the trial court within fifty days from the date of the judgment and not filed in this court within sixty days from the date of the judgment, and that notice of appeal was not given within ten days from the date of the judgment, and the appeal bond was not filed within thirty days from the date of the judgment. Appellant has filed a motion for leave to file a supplemental transcript, which brings up the judgment "as corrected" by the trial court. The changes made consisted of the following: The last paragraph of the original entry began, "It is therefore ordered, adjudged and decreed by the Court, on this the 29th day of May, 1952," and ends, "Entered June 16, 1952," and as corrected, these recitals are, "It is therefore ordered, adjudged and decreed by the Court, on this the 16th day of June, 1952," and "Entered June 16, 1952. Signed, entered and rendered on June 16, 1952."

Appellant's original motion for new trial was filed on June 25, 1952; his amended motion for new trial was filed on July 14;

motion for new trial was overruled and notice of appeal was given on August 8; the appeal bond was filed on September 6; the statement of facts was filed in the trial court on September 24; and in this court on October 6. So it will be seen that if the judgment was rendered on June 16, the various steps for perfecting the appeal were taken in time.

The record does not show whether the judgment was corrected during or after the term.

Appellee contends that the trial court was powerless to correct the judgment because the judgment became final thirty days after May 29, and that under Rule 330(l), T.R.C.P., the matter could be reached only by bill of review.

We think the authorities fully sustain the action of the court in making the corrections in the judgment during or after the term, and before or after appeal was perfected to this court. 25 Tex.Jur., pp. 524, 528; Bray et ux. v. Clark, Tex.Civ. App., 9 S.W.2d 203, error dismissed; Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040; Panhandle Construction Co. v. Lindsey, 123 Tex. 613, 72 S.W.2d 1068; O'Daniel v. Libal, Tex.Civ.App., 196 S.W.2d 211; Glasscock v. Bryant, Tex.Civ.App., 185 S. W.2d 595, refused w. m.; Townes v. Lattimore, 114 Tex. 511, 272 S.W. 435; Hooker v. Williamson, 60 Tex. 524.

"In the absence of a statute to the contrary, a court has full control over its orders or judgments during the term at which they are made, and may, on sufficient cause shown, in the exercise of its sound discretion, amend, correct, revise, supplement, open, or vacate such judgments, at least where the court is a court of general jurisdiction. This power is inherent and exists independently of any statute. * * * The perfection of an appeal during the term does not deprive the court of this power." 49 C.J.S., Judgments, § 229, page 436. See Texas cases cited in note 7 under said section.

In O'Daniel v. Libal, supra [196 S.W. 2d 215], it is said: "The court has the inherent power, during the term at which its judgment is pronounced and rendered and

even after appeal is perfected, to have its records speak the truth by entering of record the judgment that was actually pronounced and rendered in open court. See 34 C.J., p. 235, where it is stated: 'If anything has been omitted from the judgment which is necessarily or properly a part of it, and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or counsel, or the clerk, the omission may be supplied by an amendment even after the term.' * * *"

In Coleman v. Zapp, supra [105 Tex. 491, 151 S.W. 1041], Chief Justice Phillips of our Supreme Court uses the following language:

"A proceeding of such character, whose only purpose is to have the judgment entry speak truly the judgment as rendered, neither asserts nor seeks the enforcement of any new right. It presents no issue between the parties except in respect to the accuracy of the record, and otherwise involves the adjudication of nothing between them. It is powerless to reopen the controversy as closed and sealed by the judgment, and makes no such attempt. The inquiry under it is not what judgment might or ought to have been rendered, but only what judgment was rendered; and such is the sole issue to be determined. If an amended or corrected entry be ordered, the status of the parties and their relative rights, as decreed and fixed by the judgment, remains untouched and unaltered, in no sense adjudicated anew, but only judicially evidenced as originally determined. The result is that only that is done by the court which it had the inherent power to originally do as a part of its decision of the case, and which it would have done in the interest of a truthful record.

"It is as much the concern and duty of the court to have its records faithfully recite its judgments as it is to render the judgments themselves, and for that reason it is held that its jurisdiction over its records does not end with the term. In this sense a case is regarded as pending until the judgment rendered is correctly recorded. It is the right of parties to have such a record; and it ought not to be the law, and in our opinion it is not the law, that they are under the necessity of instituting an independent suit to obtain it."

Rule 330(*l*) has no application to proceedings to make the judgment entry speak the truth. It merely provides that the judgment becomes as final after thirty days as if the term of court had expired, and that it cannot be set aside after that time except by bill of review. A proceeding to correct the record of a judgment is not a proceeding to set it aside. Rule 330 (*l*) is in the exact language of art. 2092 (30), which was under consideration when Chief Justice Cureton, speaking for the Supreme Court in Nevitt v. Wilson, 116 Tex. 29, 285 S.W. 1079, 1082, 48 A.L.R. 355, said: "* * * The power of a court to correct inadvertent judgment entries or irregularities which find place upon its minutes without authority or judicial action is one which does not rest upon legislative acts, and cannot be destroyed by legislative authority. That power of the court is derived from the Constitution, which creates it. The power of the court to make its minutes speak the truth as to what the court has actually done is beyond legislative limitation or control, unless, of course, under some principle of estoppel, rights of third parties may have intervened. In consequence of this doctrine, it is established law that statutes such as the one quoted above, limiting the power of courts within a certain period of time to control their judgments, have no application to the organic power of courts to correct nonjudicial mistakes in their proceedings, or to annul orders and judgments inadvertently or improperly entered of record. Freeman on Judgments (5th Ed.), Vol. 1, §§ 216, 217, 218, 219, 220, 226; Coleman v. Zapp, 105 Tex. 491, 494, 151 S.W. 1040; Burnett v. State, 14 Tex. [455] 456, 65 Am.Dec. 131; Whittaker v. Gee, 63 Tex. 435; Mouser v. First National Bank, Tex.Civ.App., 197 S. W. 1000; Moore v. Toyah Valley Irr. Co., Tex.Civ.App., 179 S.W. 550; Gerlach Mer-

cantile Co. v. Hughes-Bozarth-Anderson Co., Tex.Civ.App., 189 S.W. 784; Mausel [Mansel] v. Castles, Tex.Civ.App., 54 S.W. 299. See many cases in the notes to Vernon's Ann.Civ.St.1925, art. 2228." Rule 316, T.R.C.P., provides, "Mistakes in the record of any judgment or decree may be amended by the judge in open court according to the truth or justice of the case after notice of the application therefor has been given to the parties interested in such judgment or decree, and thereafter the execution shall conform to the judgment as amended."

■ Appellee does not complain that the action of the trial court was had without proper motion, notice and hearing. In any event, in the absence of the record we must presume the regularity of the actions of that court. Hannon v. Henson, Tex.Com.App., 15 S.W.2d 579; 31 C.J.S., Evidence, § 145, page 792.

Appellant's motion for leave to file the supplemental transcript is hereby granted and appellee's motion to dismiss the appeal is overruled.

Appellant and appellee entered into a written contract on July 4, 1949, as follows:

"Mr. T. C. Hart
"Westbrook, Texas
"Dear Mr. Hart:

"This will confirm our agreement, wherein I agree to buy and you agree to sell and deliver to me, One-Fourth of the minerals under your 160 acres of land in Mitchell County, Texas, described as the South-West Quarter of section 17, Block 28, Township 1 South, for which I agree to pay you the sum of $20,000.00 cash upon approval of title and delivery of valid deed.

"It is agreed and understood that you are to furnish me with complete abstract of title certified down to date within five days from this date covering the above land and I am to have five days after receipt of such abstracts within which to examine title to said land and in event the title is satisfactory, I am to pay you the said $20,000.00 within the said five days, upon delivery of said valid deed.

"As soon as you have the abstracts certified to date and have the deed executed (within said five days) you are to send the deed and abstracts to the Continental National Bank of Ft. Worth, Texas, together with your draft on me for the said $20,000.-00, with instructions to the Continental National Bank to deliver the said deed to me upon payment of the said $20,000.00, and to return the said abstracts to you.

"Yours truly
(Signed) Francis K. Campbell
Francis K. Campbell

Accepted July 4th, 1949
(Signed) "T. C. Hart
"Leola Hart"

Appellee alleged that he performed the contract, "in every respect," but that appellant "wholly breached said contract and agreement, and wholly failed to pay plaintiff." He further alleged that he furnished appellant with an abstract showing a valid title to said property, and there was nothing to prevent his delivering "a good and sufficient" title to appellant, which he stood ready, willing and able to do. Appellant excepted to the allegations about a valid and a good and sufficient title as not being the kind of title contracted for, and alleged a rescission of the contract by both parties in that the mineral deed and draft were recalled by appellee before the expiration of the five days provided for the examination of the title, and before the examination was completed, and that this was done with the consent and acquiescence of appellant. He further alleged that he did not approve the title and the title was not satisfactory.

Appellant timely filed a motion for an instructed verdict, but such motion was overruled, and in response to the issues submitted, the jury found, (1) that appellee tendered a good and merchantable title; (2) that the action of appellant in refusing to accept the title was in bad faith; (3) that on July 4, 1949, the market value of the property was $500 per acre; (4) that its market value on July 13, 1949, was nothing; and (5) that appellee furnished to appellant a complete abstract of title covering the property.

Appellant objected to the issue relating to good and merchantable title because the

contract called for a title satisfactory to appellant. He objected to the issue involving the bad faith of appellant because that issue was not involved under the pleadings, and because it assumed that appellant had refused to accept the title when the evidence conclusively showed that appellee's agent, the City National Bank of Colorado City, had withdrawn the deed and draft and had withdrawn the abstract from the possession of appellant before the expiration of the five days in which to examine the title. He objected to the two issues involving market value, and to the issue relating to the appellee's having furnished a complete abstract because the evidence did not support them. By points of error, appellant urges a reversal of the judgment on the ground that the uncontradicted evidence shows that appellee withdrew the mineral deed and draft and withdrew the abstract from the possession of appellant before the expiration of the five days provided in the contract for examination of the title, and that therefore no breach of the contract by appellant was shown, and that since the papers were withdrawn by appellee with the consent and acquiescence of appellant, the evidence conclusively established a rescission of the contract by both parties. By other points, reversal is sought because the evidence failed to show that appellee furnished a complete abstract, and because of the action of the court in submitting issues to the jury relating to "good and merchantable" title when the contract required appellee to furnish a "satisfactory" title.

On July 5, 1949, a draft for $20,000, payable "within 5 days after receipt of abstract," signed by appellee Hart and drawn on appellant, c/o Continental National Bank, Forth Worth, Texas, with mineral deed attached, was deposited by Hart for collection in the City National Bank of Colorado City. On July 7, 1949, the abstract of title was mailed to Continental National Bank from Colorado City. On July 9, 1949, the abstract was received by appellant from the Continental National Bank. On July 13, 1949, the Continental National Bank received instructions from the forwarding bank, the City National Bank of Colorado City, to return the draft and mineral deed

and the Continental National Bank, on said date, returned the draft and mineral deed to the City National Bank of Colorado City and they were received by the latter bank on July 14, 1949. On July 13, 1949, Mr. Woodson of the Continental National Bank told appellant that the papers had been ordered returned to the City National Bank of Colorado City and on that date appellant delivered the abstract to the Continental National Bank for delivery to British American Oil Producing Company, who had been authorized by appellee to examine the abstract after appellant had completed his use of it. When notified on the 13th by Mr. Woodson of the Continental National Bank that the papers had to be returned to Colorado City that day, appellant said to him, "Well, there's nothing to do but to return it, because I am not satisfied with the title and my time wasn't up either."

■ Appellant's point that no breach of the contract on his part is shown, and that the court erred in rendering judgment against him, is sustained. Where a contract for the sale of an interest in land provides that within five days the seller will send the deed and abstract and draft for the purchase money to a bank in a distant city, and that the purchaser shall have five days for examination of the title, and if title is satisfactory he is to pay the draft and receive his deed from said bank within five days after receiving the abstract, and on the fourth day after the purchaser has received the abstract for examination the bank which the seller engaged to forward the deed for delivery and the draft for collection recalls the draft and deed, a finding that the purchaser breached the contract is not supported by the evidence, and a judgment for the seller for damages cannot stand. Reitzer v. Medlake Development Co., Tex.Civ.App., 27 S.W.2d 563; 17 C.J.S., Contracts, § 344, page 797.

■ Appellant contends that the evidence concerning the withdrawal of the instruments conclusively shows a mutual rescission and cancellation of the contract. While it is an interesting point, we are

261

unable to agree that the evidence establishes mutual rescission as a matter of law. Parties to an executory contract may, by mutual consent, rescind or abandon it, and this right exists independent of any provision in the contract authorizing them to do so. 17 C.J.S., Contracts, § 387, page 879, and cases there cited; 2 Black Resc. and Canc., p. 1231. The agreement to rescind must have the understanding consent of the parties, which may be inferred from their conduct indicating their mutual understanding that the contract is at an end. Black Resc. and Canc., supra, p. 1244. "To constitute abandonment of contract by conduct, the acts relied on must be positive, unequivocal, and inconsistent with the existence of the contract. * * *" Mood v. Methodist Episcopal Church South, Tex. Civ.App., 289 S.W. 461, 464. The evidence fails to show that appellee Hart, the seller, knew that his agent, the forwarding bank, recalled the instruments on the 13th; and the possibility that such action resulted from an error in calculating the time the contract allowed appellant for performance is not ruled out. Although such a withdrawal of the papers could prevent performance by appellant, it did not conclusively show an intention to rescind on the part of appellee, for it is just as reasonable to assume that appellee, or his agent, the forwarding bank, if the time was miscalculated, believed that appellant had already breached the contract by refusing to pay the draft.

▮▮▮▮ Appellant's next point is that since the contract called for "satisfactory" title, the court erred in submitting to the jury the issue as to "good and merchantable" title. It is appellant's contention that the contract required appellee to furnish a title satisfactory to appellant, and if his determination of dissatisfaction was honestly arrived at, he was at liberty to reject the title and refuse to buy the property. Appellee counters with the proposition that a contract to furnish a satisfactory title is complied with by furnishing a good and merchantable title. There is respectable authority for the latter view. Tudor v. Bank of Lincoln, 184 Ark. 1110, 44 S.W.2d 1087; Ogg v. Herman, 71 Mont. 10, 227 P.

476; Moot v. Business Men's Inv. Ass'n, 157 N.Y. 201, 52 N.E. 1, 45 L.R.A. 666. But we think the holding that under a contract providing for title satisfactory to the purchaser or his attorney, the purchaser is under no obligation to buy if an unfavorable opinion as to title has resulted, is supported by the better reasoning and the great weight of authority. City of Amarillo v. W. L. Slayton & Co., Tex.Civ. App., 208 S.W. 967; Sanger v. Slayden, 7 Tex.Civ.App. 605, 26 S.W. 847; Matador Land & Cattle Co. v. White, 82 Tex. 477, 18 S.W. 603; Thurman v. City of Omaha, 64 Neb. 490, 90 N.W. 253; Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L.R.A.,N.S., 741; Stotts v. Miller, 128 Iowa 633, 105 N.W. 127; Liberman v. Beckwith, 79 Conn. 317, 65 A. 153; Averett v. Lipscombe, 76 Va. 404; Church v. Shanklin, 95 Cal. 626, 30 P. 789, 17 L.R.A. 207.

In City of Amarillo v. W. L. Slayton & Co., supra [208 S.W. 970], the court said:

"The stipulation in the proposition or bid for the purchase of the bonds, to the effect that the transcript of the proceedings leading up to the issuance of the bonds should be satisfactory to the appellee's attorney, was, we think, a condition precedent necessary to obligate appellee to take the bonds. Such provisions as contained in this contract are usually sustained by the courts. The language used in this contract required the approval by the appellee's attorney of the bond issue, and this was a condition precedent to the completion of the purchase.

" 'If a contract of sale of something already existing is expressly made subject to the approval of the purchaser, or of some one for him, and such approval involves personal judgment or opinion, the person whose judgment is required is made the sole arbiter, and his decision is conclusive, provided he really passes upon the question, and reaches a conclusion honestly, whether his conclusion is right or wrong. The parties have stipulated for his opinion, not for the decision of the judge or jury, and there is no such reason for reviewing the opinion as in a different

class of cases hereinafter referred to. In fact, justice requires that the party *who has sought to protect himself by such a stipulation be afforded the protection intended.'* (Citing cases.)

"When the opinion so given is assailed as fraudulent, not in good faith, or a mere pretense, the burden is on him who assails it. Fraud is not presumed, and, though it may be inferred from circumstances, such inference must not be guesswork or conjecture, but must be a rational and logical deduction from the circumstances found. Authorities above cited; and we also cite the following cases bearing on the question here involved, some of them almost identical with the facts in this case: U[nited] S[tates] Trust Co. **v.** [Incorporated] Town of Guthrie Center, 181 Iowa 992, 165 N.W. 188; City of Great Falls' v. Theis, C.C., 79 F. 943; Kissell [Kissel], Kinnicutt & Co. **v.** Joint School Dist. No. 1, 165 Wis. 654, 163 N.W. 167; Trowbridge v. City of New York, 24 Misc. 517, 53 N.Y.S. 616; C. A. Webb & Co. **v.** Trustees of Morganton Graded School, 143 N.C. 299, 55 S.E. 719; Church v. Shanklin, 95 Cal. 626, 30 P. 789, 17 L.R.A. 207; Allen v. Pockwitz, 103 Cal. 85, 36 P. 1039, 42 Am.St.Rep. 99; Thompson v. Dickerson, 68 Mo.App. 535; Flanagan v. Fox, 6 Misc. 132, 26 N.Y.S. 48.

"The appellee, as a condition precedent to the purchase of the bonds, was entitled to the favorable opinion of his lawyer. The opinion being adverse to the legality of the bonds under appellee's proposition, there could be no obligation on his part to take the bonds at the price bid, and his good-faith money should have been returned. Certainly under his contract he had not forfeited it."

In Hollingsworth v. Colthurst, supra, the Supreme Court of Kansas uses the following language:

" * * * The transaction involved an exchange of land, and the contract contained the following provision: 'It is further agreed and understood by the parties to this contract that each party shall furnish an abstract showing satisfactory title ·to the above-named properties.' The petition did not allege that the plaintiff furnished an abstract showing satisfactory title to his land, or that the defendant refused to receive an abstract of title, or to investigate the title offered, or that the defendant arbitrarily or capriciously rejected such title, or otherwise acted in bad faith in the matter. It was merely stated that the plaintiff furnished an abstract showing a good and sufficient title, and that the defendant refused to accept a warranty deed free of incumbrances. A demurrer to the petition was sustained, and the plaintiff prosecutes error.

"The question involved is not a new one in the law, and this court has already indicated its views respecting the principles to be applied. Parties to a contract may lawfully stipulate that performance by one of them shall be to the satisfaction of the other. The obligation of a contract is not destroyed because it contains such a provision, as Chancellor Kent seems to have believed. Folliard v. Wallace, 2 Johns., N.Y., 395. If such a contract be made, the party to be satisfied is the judge of his own satisfaction, subject to the limitation that he must act in good faith. He should fairly and candidly investigate and consider the matter, reach a genuine conclusion, and express the true state of his mind. He cannot act arbitrarily or capriciously, or merely feign dissatisfaction. The application of these principles is not limited to transactions involving personal taste and preference. All this follows from the decision in the case of Campbell [Preserve] Co. **v.** Holcomb, 67 Kan. 48, 72 P. 552. In the following cases the principles upon which Campbell [Preserve] Co. v. Holcomb was determined were applied to transactions involving the title to real estate: (citing cases). Very respectable courts hold contrary views,

but this court is not disposed to follow them, believing that the better reasoning, as well as the weight of authority, supports the conclusions announced. In this case, no third person having been named as umpire, it was left to the defendant to determine whether or not he was satisfied. He was bound to meet the responsibility in the same upright and straightforward manner as if he had been a stranger, to whom the title was to be satisfactory. Having done this, his satisfaction or dissatisfaction fixed the rights of the parties. It is of no consequence that a court or jury might believe that he ought to have been satisfied, or that a reasonably prudent purchaser would have been satisfied. In every city there is likely to be some attorney who is regarded as much more technical than his fellow members of the bar in his requirements respecting abstracts and land titles. Suppose the matter in controversy had been left to such an attorney, and that in all probity he had expressed dissatisfaction. The defendant would have been absolved. Evidence that the attorney entertained unreasonable views would only be relevant in connection with proof of dishonesty or want of good faith. The same is true here.

"The plaintiff argues that a land title is either good or bad, that an abstract will show a title either good or bad, and that there cannot be, in common sense or reason, dissatisfaction with a good title. The experience of every lawyer teaches that it is frequently a very difficult and perplexing question whether a land title is good; and, although he may not be able to give clear reasons why it is bad, he may be incapable of bringing himself to the point of approving it. The argument is answered by the Supreme Court of Connecticut, in Liberman v. Beckwith, as follows: 'Titles sold and transferred may be good, bad, or doubtful, absolute or limited. The same title may be satisfactory to one purchaser, and not to another. One might be quite willing to buy a doubtful title, while another would not be satisfied with a marketable title so limited as to involve a special risk of litigation in his use of the property purchased.' There is no more difficulty in proving the good faith of a party to a contract, who determines for himself whether he is satisfied, than there is when a third person is the umpire, or than there is in many other instances where only the good faith of the inquiry, and not the grounds of the conclusion, is open to question."

The court submitted both the issue of "good and merchantable" title and bad faith on the part of appellant "in refusing to accept the title." Aside from the assumption that appellant refused to accept the title, we believe the court failed properly to submit the case made by the contract and the pleadings of appellee. Appellee declared on a contract obligating him to furnish a title satisfactory to appellant, but did not plead or prove that his title was satisfactory to appellant, nor did he plead that appellant acted in bad faith in not accepting the title. If, as we think the authorities hold, the appellant was relieved of his obligation to purchase when honestly dissatisfied with the title, the burden was on appellee to allege and prove that he furnished an abstract showing a title free of defects, that appellant was in fact satisfied with the title, and that his rejection of the title was actuated by bad faith.

Had the issue of bad faith been raised by the pleadings, we think the evidence was insufficient to support such a finding. There is no evidence that appellant's dissatisfaction with the title was not honestly arrived at. Proof that one man in his requirements as to land titles is more exacting than another is not proof that he is less honest.

A contract to furnish title satisfactory to the purchaser being reasonable, not against public policy, and lawful, we perceive no reason why it should not be judicially recognized and enforced.

Appellant objected to the title because some of the instruments were not copied in full but summarized by the abstracter, and because, he said, there was a hiatus in the history of the title as shown by the abstract furnished.

In an effort to prove that he furnished a complete abstract showing a good and merchantable title, appellee first introduced an abstract in four parts, which disclosed a hiatus in the history of the title from December 11, 1923, to January 17, 1924, but later in the trial he introduced a supplement prepared on May 26, 1952, covering the hiatus. The abstracter's letter transmitting the abstract to the Continental National Bank for appellant's use said the abstract in five parts was enclosed. Appellant receipted for the abstract on that letter, although he testified he believed the abstract contained only four parts and disclosed the hiatus. In its letter of July 13, 1949, transmitting the abstract to its attorney, British American Oil Producing Company described it as being "in five parts from the beginning to July 6, 1949." When the abstract was returned by British American to the abstracter about July 26, 1949, appellee saw the abstracter open the sealed package with a knife, and testified that the four parts of the abstract first introduced in evidence constituted all the instruments in the package when so opened.

Appellee offered as witnesses two reputable lawyers who testified that in their opinion the five parts of the abstract introduced in evidence showed a good and merchantable title. One of the attorneys examined the abstract for British American in July, 1949. It was then in five parts, and he believed the supplement dated May 26, 1952, reflected the same instruments shown in the missing supplement, although he could be positive about only one of them. He evidently found some objection to the title in July, 1949, as his company requested the abstracter to "comply with Requirement #1 which refers to a Court Order confirming a Decree of Partition."

What became of the missing supplement this court, fortunately, is not required to determine. But it is important to know exactly what was in the supplement, the condition of the title as reflected by it, and whether it was in fact ever delivered to appellant for examination.

From this record it is difficult, if not impossible, to determine whether appellant was furnished a complete abstract showing a good and merchantable title. Moreover, we think that whether the abstract introduced in evidence showed such a title was a question of law and not of fact. Brackenridge v. Claridge, 91 Tex. 527, 44 S.W. 819, 43 L.R.A. 593; Moser v. Tucker, Tex.Civ.App., 195 S.W. 259; Bourland v. Huffhines, Tex.Civ.App., 269 S.W. 184; Crenshaw v. True, Tex.Civ. App., 295 S.W. 632; Wakeland v. Robertson, Tex.Civ.App., 219 S.W. 842.

For the errors discussed, the judgment is reversed and the cause remanded.

MASSEY, C. J., not sitting.